Harvey BRODY, Isidore Blachman and B & B Parking, Inc., Harvey Brody, President, Plaintiffs,

v.

Terrance MOAN, individually and as Deputy Commissioner of New York City Department of General Services, Robert Litke, individually and as Commissioner of New York City Department of General Services; Nicholas Corrado, individually and as Assistant Commissioner of New York City Department of General Services; Anthony B. Gliedman, individually and as Commissioner of New York City Department of Housing Preservation & Development; New York City Department of General Services; New York City Department of Housing Preservation & Development and the City of New York, Defendants.

No. 82 Civ. 6983–CSH.

United States District Court,
S.D. New York.

Nov. 22, 1982.

Leopold Kaplan, New York City, for plaintiffs; Barbara R. Simpson, Rochelle M. Edelman, New York City, of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel, New York City, for defendants; Janice L. Bowman, Asst. Corp. Counsel, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

In this action against the City of New York and four of its Commissioners individually and in their official capacities, plaintiffs, joint stockholders of the plaintiff corporation, seek to enjoin the City from evicting them from commercial property which they lease and operate as a parking garage. Jurisdiction is alleged under 42 U.S.C. §§ 1983, 4601, and 1441, and 28 U.S.C. § 1343. Defendants cross move to dismiss the complaint. For the reasons stated, I deny an injunction and dismiss the complaint.

### FACTS

Plaintiffs Harvey Brody and Isadore Blachman are joint stockholders of B & B Parking Inc. ("B & B") which operates a parking garage in lower Manhattan. Plaintiffs first obtained a lease for the premises in 1958. In 1965, defendant City of New York (the "City") condemned the premises to construct a new Civic Center. The Civic Center has not been constructed and the City's plans to do so have been abandoned. Since the time it acquired the property, the City has operated the premises in a proprietary manner. Plaintiffs' continued occupancy of the premises has been the subject of substantial litigation in the state courts of New York. While a complete and de-

tailed history of these proceedings is not necessary to this opinion, a brief tour of the highlights is helpful to an understanding of the current relationship between the parties.

The City first applied for a writ of possession in New York State Supreme Court in 1966. Its application was denied. The writ was granted in 1969, on condition that the City file an affidavit providing proof of capital budget authorization for the Civic Center. The affidavit was never filed, as the Civic Center project was abandoned for fiscal reasons.

During the intervening years the plaintiffs remained as tenants and continued to pay the City rent. This relationship was punctuated by rent increases, terminations of tenancy, state court litigation and negotiations between the parties. Finally, in 1981, the City again served plaintiffs with notice of eviction and notice of intent to publicly auction the property. The City obtained a judgment of eviction from the Civil Court of New York which plaintiffs unsuccessfully challenged in state court. Plaintiffs also brought an unsuccessful proceeding pursuant to N.Y.C.P.L.R. Article 78 challenging their eviction and the auctioning of their leasehold. The auction was held, plaintiffs were present, and the high bid, submitted by a third party, was a monthly rental of $41,000.00, substantially more than plaintiffs were paying.

In March, 1982, the City commenced a summary proceeding in Civil Court to recover possession of the premises. After the City's motion for summary judgment was granted, plaintiffs filed another Article 78 proceeding which was dismissed on October 19, 1982. The City has now submitted to the state court a proposed judgment permitting it to take immediate possession of the premises.

### DISCUSSION

#### I. *Due Process*

1. *Service*

Plaintiffs contend that they were denied due process of law as guaranteed by

the Fourteenth Amendment because they were not properly served with notice of the summary eviction proceeding in 1981. Service in such proceedings is governed by New York Real Property Actions and Proceedings Law Section 735. Service may be accomplished by personal service, by substituted service upon a person of suitable age and discretion employed on the premises, or, if substituted service cannot be accomplished, by affixing a copy upon a conspicuous part of the property sought to be recovered. If either the substituted or conspicuous methods of service are used, a copy of the notice of petition and the petition must be mailed to the respondent (by certified or registered mail) within one day after the delivery or affixing. Plaintiffs allege that the City failed to comply with the requirements of this statute.[1] This claim fails to raise a constitutional question sufficient to invoke the jurisdiction of this Court under section 1983.

Plaintiffs have confused a defect in the manner of service of process with a failure to provide the notice required by the Due Process Clause of the Constitution. Notice meets the constitutional test of due process if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Plaintiffs do not, and in fact could not, sustain a challenge to the facial constitutionality of Section 735. The Court of Appeals for this Circuit has extensively examined Section 735 and has found it to be "carefully drafted and calculated to apprise tenants of the pendency of the action" and "not vulnerable to constitutional attack." *Velazquez v. Thompson,* 451 F.2d

202, 206 (2d Cir.1971) (citing *Mullane v. Central Hanover Trust Co., supra* ). Nor do plaintiffs claim that the notice which they admittedly received failed to apprise them of the pendency of the summary proceeding at which they appeared and defended.

The cases relied upon by plaintiffs demonstrate the inadequacy of their constitutional claim. *Escalera v. New York City Housing Authority,* 425 F.2d 853 (2d Cir. 1970), was a direct constitutional challenge to the sufficiency of the *procedures* pursuant to which the Housing Authority terminated tenancy or assessed additional rent. *United States v. Brand Jewelers, Inc.,* 318 F.Supp. 1293 (S.D.N.Y.1970), was a suit brought by the United States seeking injunctive and other civil remedies for an allegedly "long-standing and systematic practice" of obtaining default judgments against economically disadvantaged defendants by means of employing process servers who failed to make proper service or filed false affidavits of service. *Lindsey v. Greene,* 649 F.2d 425 (6th Cir.1981), which plaintiffs describe as "strikingly similar in fact and law" to the instant case, Brief at 10, was a constitutional challenge to the facial validity of a Kentucky *statute* permitting constructive service of process by posting in forcible entry and detainer actions. The Court held the statute unconstitutional because it failed to require mailing in addition to posting. None of these cases supports the proposition that a single instance of alleged failure to comply with the service provisions of a facially valid statute or procedure constitutes a constitutional violation under § 1983.

The distinction between a challenge to the procedures themselves and a claim based on failure to comply with those procedures is illustrated by *Keeler v. Joy,* 489

---

1. Plaintiffs' brief in support of their motion addresses the question of service within the context of New York Civil Practice Law and Rules Sections 308 and 311, the general provisions for service of process in New York. Plaintiffs argued that service was accomplished by the "conspicuous" or "nail and mail" method which is insufficient under those sections to accomplish service upon a corporation. Brief at pp. 7–10.

At oral argument of this motion, plaintiffs properly conceded that service in this case is governed by the special provisions of § 735 of the Real Property Actions and Proceedings Law. Unlike C.P.L.R. § 311, § 735 does permit conspicuous service on corporations. Plaintiffs' counsel submitted an additional affidavit alleging lack of compliance with the requirements of § 735.

F.Supp. 568, *aff'd,* 641 F.2d 1044 (2d Cir. 1981), *cert. denied,* 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1982). There, tenants in rent-controlled property challenged the constitutionality of eviction procedures, claiming that they were entitled to and were not given a hearing. After holding that the procedures were constitutional on their face, the Court observed:

"It may well be that the commissioner is abusing his discretion in one or more cases in not according one or more of these plaintiffs a hearing, but the remedy for that abuse is not found here [in federal court] but in the state courts."

489 F.Supp. at 573 n. 2. Similarly, plaintiffs here have no constitutional claim for inadequate notice cognizable in this Court.

### 2. *Unconstitutional Taking*

■ Plaintiffs also contend that eviction from their leasehold would constitute an "unconstitutional taking" depriving them of property without due process. They argue first that their leasehold constitutes property which cannot be taken by the City without adequate compensation; and second, that the condemnation here is without the requisite "public purpose" because the City has abandoned its plan to build the Civic Center.

The City's attempts to oust plaintiffs from their leasehold are nothing more than eviction proceedings brought by a landlord against a commercial tenant. The City's title to the property is not affected by the abandonment of its plans to build the Civic Center subsequent to its condemnation of the property in 1965:

"The rule is well established that where the fee to property is, in good faith, appropriated for a particular public purpose, the municipality may subsequently convert it to other uses, or even abandon it entirely, without any impairment of the validity of the estate originally acquired or reversion to the former owners."

*Fur-Lex Realty, Inc. v. Lindsay,* 81 Misc.2d 904, 905, 367 N.Y.S.2d 388, 390 (N.Y.County,

1975), quoted in *Carl Duboff, Inc. v. The City of New York,* Index No. 23534/80, (N.Y.Co.1982). Because the property here was taken in good faith for a public purpose, plaintiffs remain no more than month to month tenants who may be evicted pursuant to state law procedures. *Duboff v. City, supra.*

In the *Duboff* case, the City had condemned property which the plaintiff leased and used as a parking lot. Nearly twenty years later, the City attempted to evict the plaintiff from the property so that it could auction off the leasehold to a tenant willing to pay a higher rent. Plaintiffs sued to retain possession of the property, claiming, *inter alia,* that they were entitled to continued occupation of the premises because the City had abandoned the project underlying the earlier condemnation. Citing the *Fur-Lex* case, Judge Ostrau of the New York Supreme Court observed:

"Plaintiff is nothing more than a tenant at will on these premises and as such can be removed at any time or for any reason. To allow otherwise would allow any tenant in similar circumstances to receive what in effect would be a leasehold in perpetuity. A tenant may not remain on a condemned site in perpetuity until the municipality requires the property for the purposes for which it was condemned. The only requirement necessary, when the municipality decides to utilize the site, is that proper notice of eviction be given along with notice of the assistance and benefits that are available to the tenant."

*Duboff, supra,* at 6–7. Judge Ostrau's well reasoned opinion is equally applicable to the plaintiffs' argument here. Plaintiffs' claim that their eviction constitutes an unconstitutional taking is without merit.[2]

### 3. *Right to Earn a Living*

Plaintiffs also contend that their eviction violates due process by depriving them of "their personal right to earn a living," their right "to follow a chosen profession," and

---

**2.** Since the condemnation was proper, there is no dispute as to title and plaintiffs' contention that eviction by summary proceedings is improper must necessarily fall.

their "right to engage in any of the common occupations of life." The threshold question is whether plaintiffs have a property interest in the operation of the parking garage sufficient to invoke the protection of the Due Process Clause.

■ It bears repeating that this case involves the eviction of a commercial tenant from property owned by the City. The City has taken no additional action of any type which would prohibit or prevent the plaintiffs from operating a parking garage elsewhere or from earning a living by any other means. Plaintiffs argue that their eviction will have this practical effect because they are "neither young nor rich," "will be virtually unemployable," and "simply do not have the wherewithal to open another garage." (Brief at 13). These allegations are insufficient to raise plaintiffs' continued possession of their leasehold to the level of a fundamental personal right protected by the Fourteenth Amendment.

In *Perry v. Sinderman,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972), the Supreme Court explained that "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." (citing *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, decided that same day). The person asserting the claimed property right must point to rules or understandings justifying his expectation, and it must be a rational and legitimate expectation, judged by an objective standard. He cannot construct an enforceable expectation out of wishful thinking or "an abstract need or desire for it." *Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709.

Whatever plaintiffs may have hoped or desired, they point to no rule, understanding or practice giving rise to a legitimate expectation that they could continue to operate their parking garage at its present location until they either chose to retire or obtained the means to move elsewhere. *See Grace Towers Tenants Associa-*

*tion v. Grace Housing Development Fund Co., Inc.,* 538 F.2d 491 (2d Cir.1976) ("These tenants could not reasonably expect that they were to be forever immunized from rent increases...."). Plaintiffs have no personal property right in their leasehold derived from their right to earn a living. They are subject to eviction pursuant to the procedures mandated by state law.

## II. *Equal Protection*

■ Plaintiffs allege that the City's attempts to evict them constitute discriminatory treatment in violation of the Equal Protection Clause. They premise this claim on the fact that they are the only tenants on the property singled out for eviction. It is undisputed, however, that plaintiffs are the only tenants operating as a parking garage. "Constitutional principles of equal protection do not require that all persons be treated identically." *Alma Society, Inc. v. Mellon,* 601 F.2d 1225 (2d Cir.), *cert. denied,* 444 U.S. 995, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979). "The essence of equal protection is that persons similarly situated with respect to challenged government action shall be treated similarly." *School Crossing Guards Association, Etc. v. Beame,* 438 F.Supp. 1275, 1281 (S.D.N.Y.1977). The Supreme Court has explained that "The Constitution does not require things which are different in fact ... to be treated in law as though they were the same." *Rinaldi v. Yeager,* 384 U.S. 305, 309, 86 S.Ct. 1497, 1499, 16 L.Ed.2d 577 (1965). Simply put, the City acting as landlord is not constitutionally required to treat a tenant parking garage the same way it treats tenants who are not parking garages.

The cases relied on by plaintiffs all involve government action or classification resulting in abridgment of First Amendment rights, a situation not present here. In *Show-World Center, Inc. v. Walsh,* the Court enjoined the City from enforcing a vacate order against "the only tenant exercising First Amendment rights" where "there is a strong likelihood that, at trial, Show-World will succeed in proving that the vacate order was discriminatorily enforced with the intent of suppressing Show-

World's First Amendment rights." 438 F.Supp. 642, 652 (S.D.N.Y.1977). *American Mini-Theatres, Inc. v. Gribbs,* 518 F.2d 1014 (6th Cir.1975) and *Purple Onion, Inc. v. Jackson,* 511 F.Supp. 1207 (N.D.Ga.Atl.Div. 1981) both involve zoning ordinances held to unconstitutionally infringe First Amendment rights. Here, the plaintiffs allege only that the City "intends to expand its lucrative role as lessor of parking garages" and is "motivated by the prospect of high rental income."[3] (Brief at 4, 21). The City's action abridges no independent constitutional guarantee and flows from neither a "discriminatory purpose" nor an "illegitimate motive." *See Show-World v. Walsh, supra,* 438 F.Supp. at 651. Plaintiffs have not been denied equal protection of the laws as it is guaranteed by the Constitution.

### III. *Federal Statutes*

Plaintiffs also seek to invoke the jurisdiction of this Court as "federally protected condemnees in possession by reason of the use of federal funds" pursuant to Title I of the Housing Act of 1949. Use of federal funds is alleged "on information and belief." This is said to implicate the provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601 *et seq.* (the "Relocation Act"), a statute intended "to establish a uniform policy for the fair and equitable treatment of persons displaced as a result of Federal and federally assisted programs— ..." 42 U.S.C. § 4621. Plaintiffs' fourth claim for relief alleges that the City failed to pay relocation benefits as required by the Relocation Act. Presumably, plaintiffs seek to enjoin their eviction until the statutory benefits are provided. Because plaintiffs have failed to sufficiently allege or demonstrate the requisite jurisdictional basis, this claim must also be dismissed.

Federal courts are courts of limited jurisdiction and the "burden of proving jurisdictional prerequisites lies on the party who seeks the exercise of jurisdiction in his favor ...' [H]e must carry throughout the litigation the burden of showing that he is properly in court.'" *Kheel v. Port of New York Authority,* 457 F.2d 46, 48 (2d Cir. 1972) quoting *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). See also *Benjamins v. British European Airways,* 572 F.2d 913, 915 (2d Cir.1978), *cert. denied,* 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979). To meet this burden, the party seeking to establish federal jurisdiction has "a duty 'to make clear the basis of jurisdiction over the action,' *Grise v. Combs,* 183 F.Supp. 705, 707 (E.D.Ky.1960), and to adduce the relevant facts needed for decision." *Commonwealth Land Title Ins. Co. v. Berks Title Inc.,* 508 F.Supp. 921, 922 (E.D.Pa.1981). The Supreme Court has observed "that unadorned speculation will not suffice to invoke the federal judicial power." *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 44, 96 S.Ct. 1917, 1927, 48 L.Ed.2d 450 (1975).

It is undisputed that the Relocation Act applies only to federal or federally assisted programs or projects. *Feliciano v. Romney,* 363 F.Supp. 656 (S.D.N.Y.1973); *Alexander v. United States Department of Housing and Urban Development,* 441 U.S. 39, 99 S.Ct. 1572, 60 L.Ed.2d 28 (1979). In the *Feliciano* case, Judge Weinfeld dismissed claims under both the Housing and Relocation Acts in the absence of a contract for loan or grant between the federal agency and the state project. Here, plaintiffs' complaint states that:

> "Upon information and belief, the acquisition of the premises by defendant New York City and its agencies, was accomplished with use of federal funds obtained through Title I of the Housing Act of 1949 ("Housing Act")."

---

**3.** The City has also advised the Court that the premises are in urgent need of structural repair and that it has and continues to incur penalties pursuant to contracts it has entered with workmen hired to make those repairs. (Bionda Aff.). The City has advanced this argument as further evidence of its good faith need for immediate possession. The City's primary motive for seeking to evict plaintiffs remains its desire to maximize the rent it receives from the property.

**450**

Defendant City denies that federal funds were used to acquire or maintain the property. Defendant Terrence Moan, the Deputy Commissioner of the Department of General Services who has administrative responsibility over the Division of Real Property, avers that the Civic Center was a capital budget project of the City, and that he has searched the records and finds "no evidence that federal funds were ever connected with the plans for condemnation" of the property. (Moan Aff. at 3). Neither the Application and Petition for Condemnation nor the Order of Condemnation filed and entered in 1965 contain any mention of federal funds whatsoever. (Bowman Aff. Exhibits A and B). Defendant Moan avers that the project was abandoned because of the City's financial difficulties. (Moan Aff. at 3).

The complaint's jurisdictional allegations, based only upon unspecified "information and belief," were challenged by defendants' sworn disclaimers of federal funding. Plaintiffs offer no evidence from the federal agencies involved or from other sources to support the conclusory allegations of their pleading. In these circumstances, they have not carried their threshold jurisdictional burden. Federal standards and regulations do not apply to purely local acquisitions, programs or projects. *Feliciano v. Romney, supra.* *A fortiori,* federal jurisdiction does not lie to enforce them.[4]

### CONCLUSION

Plaintiffs' constitutional claims are without merit and they have failed to show any alternative basis for invoking the jurisdiction of this Court.[5] Accordingly, the Clerk of the Court is hereby directed to dismiss plaintiffs' complaint with prejudice and without costs.

It is So Ordered.

4. Plaintiffs' failure to demonstrate that any federal funding was involved in the project in question makes it unnecessary to consider whether the Relocation Act creates a private right of action for the relief plaintiffs seek.

5. Having reached this conclusion, I need not address defendants' arguments based on *res judicata,* collateral estoppel or abstention.