OPINION OF THE COURT
Paula J. Omansky, J.
These summary holdover proceedings are consolidated for *14 purposes of disposition. Petitioner in all cases is the net lessee under a long-term lease with New York City for the premises known as the Essex Street Market, a public market containing food and retail stores. Respondents are currently month-to-month tenants in the Essex Street Market, their permits from the City having expired in 1986. Respondent Delaney Clothing Inc. (hereinafter Delaney) has been a tenant in the market for about 13 years, engaged in the business of selling men’s and boys’ clothing. Respondent Silberstein has been a pickle seller in the market for approximately 51 years. Respondent Neptune Appetizing Corp. (hereinafter Neptune) has been a smoked fish seller in the market for about 12 years.
By resolution dated December 21, 1989, the former Board of Estimate authorized the City, acting through the Commissioner of the Department of Ports and Trade, to enter into a lease with I.S.J. Management Corp. for the renovation and operation of the Essex Street Market as a food and retail market. The selection of I.S.J. Management Corp. was the result of a competitive bidding process. An alternative proposal submitted by the Merchants Association of the Essex Street Market, which would have prevented the eviction of merchants such as these respondents, was rejected.
On or about April 1, 1990, petitioner signed a 30-year lease with the City of New York, acting by and through the Commissioner of its Department of Ports and Trade, for the entire premises. Pursuant to the net lease, petitioner was assigned all the various leases to the stalls, stores and other portions of the Essex Street Market operated by the merchants.
In March 1990, the City notified respondents of the assignment of their leases to the petitioner, and directed them to send rental payments to petitioner as of April 1, 1990. On or about April 17, 1990, petitioner notified respondents that it was terminating their tenancies. No reason other than the expiration of the lease term was given.
The substantive issue in this case is whether petitioner has the right to evict merchants in a public market solely on the ground that their leases have expired or, put another way, whether respondents have the right to continue their tenancies except for good cause shown, on proper notice.
At the outset, we agree with respondents that State action is involved. Petitioner, a private corporation, is a net lessee under a long-term lease with the City for operation of a public market, the Essex Street Market. The City is so "entwined” *15 with the operation of the market as to constitute significant and meaningful governmental participation, triggering constitutional due process guarantees. (Sharrock v Dell Buick-Cadillac, 45 NY2d 152, 158 [1978]; 157 W. 123rd St. Tenants Assn. v Hickson, 142 Misc 2d 984, 985 [App Term, 1st Dept 1989].) Petitioner here stands in the shoes of a government entity, in this case the City of New York. (Farmer v Moses, 232 F Supp 154, 159 [SD NY 1964].)
The City, and therefore petitioner, would normally be entitled to terminate at any time the tenancies of month-to-month tenants renting produce stalls in a public market. (Arol Dev. Corp. v Goodie Brand Packing Corp., 84 Misc 2d 493, 495 [App Term, 1st Dept 1975].) Moreover, as a general rule there is no way for a tenant to compel a renewal of the lease and to remain in the premises (1 Rasch, New York Landlord and Tenant — Summary Proceedings § 11:1 [3d ed]): "The rights arising out of real property law have ancient bases; any change in these rights is customarily achieved by legislative or constitutional enactment. Under ordinary circumstances, a landlord is not obliged to renew a lease (Robinson v Jewett, 116 NY 40, 51; Thayer v Leggett, 229 NY 152, 158), even though the tenant may have invested capital and energy in the expectation of renewal. Nor, in the absence of statute, may one contracting party be compelled to deal with the other beyond the contract term”. (Mobil Oil Corp. v Rubenfeld, 48 AD2d 428, 431 [2d Dept 1975], affd 40 NY2d 936 [1976].)
Respondents claim that developments in constitutional law have altered their status as month-to-month tenants in city-owned premises, terminable at will. They claim that they have the same constitutionally protected property interest in continuing their tenancies as residential tenants in public housing, citing Joy v Daniels (479 F2d 1236 [4th Cir 1973]); 157 W. 123rd St. Tenants Assn. v Hickson (142 Misc 2d 984, supra [App Term, 1st Dept 1989]); Hudsonview Terrace v Maury (100 Misc 2d 331 [App Term, 1st Dept 1979]).
In Joy v Daniels (479 F2d 1236, 1241 [4th Cir 1973], supra), a framework of interlocking policy, laws, regulations, and customs supported the finding that tenants in a public housing project had a property right entitling them to continued tenancy except for cause shown: "In view of the congressional policies of providing a decent home (with stability and security) for every American family, and of prohibiting arbitrary and discriminatory action, bolstered by the FHA regulations and custom, we find in the scheme of the National Housing *16 Act and the Housing and Urban Development Act of 1965 a property right or entitlement to continue occupancy until there exists a cause to evict other than the mere expiration of the lease.”
Similarly, in New York, residential tenants in public housing and in private housing in which the City is actively involved were found to have a constitutionally protected property interest entitling them to continued tenancy except for good cause shown on proper notice. (Hudsonview Terrace v Maury, 100 Misc 2d 331 [App Term, 1st Dept 1979], supra; 157 W. 123rd St. Tenants Assn. v Hickson, 142 Misc 2d 984 [App Term, 1st Dept 1989], supra.)
Commercial tenants, however, have no analogous right entitling them to the protection of constitutional safeguards. (Modell & Co. v City of New York, 159 AD2d 354 [1st Dept 1990]; Brody v Moan, 551 F Supp 443 [SD NY 1982]; see, Sidberry v Koch, 539 F Supp 413, 418 [SD NY 1982].) The requirements of procedural due process apply only to the deprivation of interests encompassed within the Fourteenth Amendment’s protection of liberty and property. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.” (Board of Regents v Roth, 408 US 564, 577 [1972].)
In Modell & Co. v City of New York (159 AD2d 354 [1st Dept 1990], supra) plaintiff corporation was a long-term tenant in premises owned by the City. It operated at first under leases with the City, then as a month-to-month tenant, and finally, under a five-year lease with the City entered into in June 1982. In 1986, the City and plaintiff discussed whether the 1982 lease would be renewed on a "sole source” basis or whether public bidding would be required. In 1986, the City sent plaintiff a letter stating that the City would offer plaintiff a five-year renewal lease. On February 25, 1987, the City notified plaintiff that it would not renew the 1982 lease and would instead insist on public bidding. Finally, the City sent plaintiff a notice terminating the lease as of October 31, 1988. Plaintiff sued the City, claiming, among other things, denial of procedural and substantive due process, and seeking judgment enjoining the City from terminating its tenancy and directing the City to execute a new lease.
The Appellate Division affirmed the trial court’s dismissal of *17 the complaint for failure to state a cause of action. It held (Modell & Co. v City of New York, 159 AD2d, supra, at 355, 356):
"As to the due process claim, plaintiff could not point to any property interest it had that was constitutionally protected * * *
"Plaintiffs denial of due process claim can be likened to that of a disappointed bidder. The claim is based on an expectation that the [C]ity would comply with its alleged criteria for 'sole source’ leasing. However, such expectation does not amount to a legitimate claim of entitlement to the lease (see, Board of Regents v Roth, 408 US 564, 577; see also, Matter of Allen v Eberling, 24 AD2d 594.)”
Respondents here, all merchants in a public market operating businesses for profit, can point to no policy, law, or regulation protecting commercial tenancies in the private or public sector. They rely solely on custom and economic need as the sources of their claim to a property interest. They state that their businesses are part of a tradition that dates back to the days of the push cart on the Lower East Side, and that their eviction because they are unable to pay the rent at which they were offered leases by petitioner deprives them of their right to earn a living.
Custom affords respondents no greater claim than the "expectation” deemed insufficient to create a property interest in Modell & Co. v City of New York (supra). Further, although respondents’ tenancies in the Essex Street Market have lasted 13, 51 and 12 years, respectively, the Appellate Division in Modell did not consider duration of tenancy a factor in evaluating the commercial tenant’s claim of a property interest.
As to the economic consequences to these respondents, the former Board of Estimate rejected an alternative proposal which would have protected merchants such as these when it passed the resolution authorizing the award of the lease of petitioner. The resolution of the Board of Estimate is not subject to collateral attack in these proceedings. (Arol Dev. Corp. v Goodie Brand Packing Corp., 84 Misc 2d 493, 495, supra.)
Respondents, commercial tenants in a public market owned by the City, do not have a constitutionally protected property interest which entitles them to continue as tenants in the market except for good cause shown, or which prevents peti *18 tioner from terminating their tenancies on the sole ground that their leases have expired. (Modell & Co. v City of New York, supra.)
Petitioner is entitled to summary judgment on the issue of its right to possession, and respondents’ motions to dismiss the petitions for failure to state a cause of action are denied.