Oscar Eddie **JORDON**, Jr., Curtis Ray Jordon, Plaintiffs,

v.

Paul W. **KEVE**, Director of Delaware Division of Adult Corrections, et al., Defendants.

Civ. A. No. 74–122.

United States District Court, D. Delaware.

Dec. 2, 1974.

Oscar Eddie. Jordon, Jr. and Curtis Ray Jordon, each appearing pro se.

Francis A. Reardon, Deputy Atty. Gen., Wilmington, Del., for defendants.

## OPINION AND ORDER

LATCHUM, Chief Judge.

On June 24, 1974, Curtis R. Jordon and Oscar Eddie Jordon, Jr., who are currently incarcerated in the Maximum Security Building of the Delaware Correctional Center ("Center"), filed a complaint requesting that (1) they "be allowed access to any academic or rehabilitative programs," and (2) that the Court "order [the] administration to show due cause as to the reasons petitioners cannot be allowed a reduced security building, i. e., medium security." [1] Named as defendants were Paul W. Keve, Director of the Delaware Division of Adult Corrections, Raymond W. Anderson, Warden, and Walter W. Redman, Deputy Warden of the Center (the "Administration"). On September 10, 1974 defendants answered and simultaneously moved to dismiss [2] on the grounds (1) that the complaint fails to state a cause of action upon which relief can be granted, and (2) that the petitioners fail to raise a constitutional question to justify the intervention of the federal court. Having carefully considered the underlying issues, this Court will dismiss the complaint on the first ground.

From the complaint and the answer, the following undisputed facts emerge. On or shortly before December 11, 1972, Oscar E. Jordon, Jr., and Curtis Ray Jordon were placed in the pre-trial building of the Center to await their criminal trial in the state court. While confined there, they were allowed "to enter academic programs." On April 16, 1973, a detainer was lodged against both petitioners for escape from a Greenville, South Carolina correctional institution. On April 23, 1973, Oscar E. Jordon, Jr. was sentenced by the state court to 18 months on a charge of assault upon a police officer; thereafter, a pre-trial classification team recommended him for medium security. However, the institu-

---

1. Motion to proceed in forma pauperis was granted on that date.

2. The Court has treated the motion to dismiss as a motion for summary judgment of dismissal.

tional classification committee of the Center classified him for maximum security on May 2. He "was placed in maximum security" on May 2, 1973;[3] on May 9, Curtis R. Jordon requested to be transferred to maximum security "to join my brother." Both petitioners were sentenced by the state court on July 20, 1973, on a charge of robbery, Oscar for 12 years and Curtis for 15 years. At no time have disciplinary charges been lodged against either petitioner.

Petitioners allege that they "were placed in" the maximum security building on May 9, 1973 without ever being formally notified by the Administration why they were so placed and that they were not formally notified as to the reason for their restriction to the maximum security building or for the termination of their participation in academic programs available to pre-trial detainees. Essentially, petitioners challenge the constitutionality of their initial maximum security classification.

█ Jurisdiction of this Court arises either under 28 U.S.C. § 1343(4) as implemented by 42 U.S.C. § 1983, or under 28 U.S.C. § 2254, the federal habeas corpus statute. Habeas corpus is the exclusive jurisdictional basis where a prisoner both attacks the "very fact or duration of his physical confinement" and demands only immediate or earlier release from that confinement. Preiser v. Rodriguez, 411 U.S. 475, at 487, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).[4] In *Preiser*, the prisoners sought restoration of accrued good time credits, a statutory

right of which they had been stripped in disciplinary proceedings, and which, if restored, would have shortened the duration of their incarceration by a pre-determined amount.[5] Post-*Preiser* decisions do not view the Court's opinion as intended to be limited to requests for restoration of statutory good time credits. However, most of these decisions have continued to accept 28 U.S.C. § 1343(4) as implemented by 42 U.S.C. § 1983 as the jurisdictional basis of a variety of complaints for equitable relief because, as they interpret *Preiser*, habeas corpus jurisdiction still encompasses only those complaints requesting, by reason of a state statute or regulation, immediate release or a pre-determined speed-up of the date of release. For specific articulation of this rationale, see Johnson v. Chairman of New York State Board of Parole, 500 F.2d 925, 926 (C.A.2, 1974) (minimum due process requirements when discretionary parole release is denied); Clutchette v. Procunier, 497 F.2d 809, 813 (C.A.9, 1974) (minimum due process requirements for disciplinary proceedings in non-"good time" credit context) (dissent on basis of prolongation of prison term); Clarence Davidson v. Keve, C.A. No. 74–128 (D.Del. Sept. 24, 1974), at 2, n. 2 (unconstitutional disciplinary measures); Wingard v. State of North Carolina, 366 F.Supp. 982, 983 (W.D.N.C.1973) (prison officials misconstruing the nature of plaintiff's sentence resulted in denial or delay of participation in rehabilitation programs, parole, etc.).[6] Even more nu-

---

3. Curtis R. Jordon was also "placed in maximum security" the same day, and was apparently classified for maximum security following his sentencing.

4. A requirement under 28 U.S.C. § 2254 is that the applicant exhaust all adequate and available state judicial remedies. See Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971), for a discussion of the scope of the exhaustion requirement.

5. The Court held that a cause of action would arise under 28 U.S.C. § 1343(4) and 42 U.S.C. § 1983 if the prisoners attacked the "conditions of . . . prison life," *id.*

at 499, 93 S.Ct. 1827, or if damages, instead of equitable relief, were sought because of the allegedly unconstitutional deprivation of statutory good time credits, *id.* at 494, 93 S. Ct. 1827. *See also* Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 2973–2974, 41 L. Ed.2d 935 (1974).

6. But see Birch v. Vincent, 368 F.Supp. 532, 533–534 (S.D.N.Y.1974) (allegedly unwarranted write ups that might affect future eligibility for parole are "an issue" affecting the duration of confinement); Baskins v. Moore, 362 F.Supp. 187 (D.S.C.1973) (con-

merous are the post-*Preiser* decisions which have accepted this rationale sub silentio. *E. g.,* Jones v. Institutional Classification Committee Field Unit No. 8, 374 F.Supp. 706 (E.D.Va.1974); Jenkins v. Keve, C.A. 74–101 (D.Del. Sept. 20, 1974), at 6; Gray v. Creamer, 376 F.Supp. 675, 680–681 (W.D.Pa. 1974), on remand from 465 F.2d 179 (C.A.3, 1972), reversing 329 F.Supp. 418 (W.D.Pa.1971).

█ It is evident that under the accepted interpretation of Preiser v. Rodriguez the complaint of the petitioners in the instant case is not a habeas corpus petition. Because their attack is focused on the initial classification decision following sentences of prolonged confinement in the Delaware prison system, a holding by this Court that they have been unconstitutionally classified cannot result in a definite speedup of their release.[7] Therefore, the jurisdiction of this Court arises under 28 U.S.C. § 1343(4) as implemented by 42 U.S.C. § 1983, rather than 28 U.S.C. § 2254, and the petitioners need not allege the exhaustion of remedies required by the latter statute.

The next issue before the Court is the defendants' effort to dismiss the complaint for lack of a cause of action under 42 U.S.C. § 1983. The Supreme Court has held that "allegations of the *pro se* complaint . . . [are held] to less stringent standards than formal pleadings drafted by lawyers," and that

it must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Accord, Gray v. Creamer, 465 F.2d 179, 181–182 (C.A.3, 1972).

First, the initial classification process whose result the petitioners attack must be fully described. Pursuant to 11 Del. Code § 6531, the Commissioner of Corrections is directed to establish, *inter alia,* various educational and rehabilitative services, in conformity with his clear responsibility to supervise the "treatment, rehabilitation, and restoration of offenders as useful, law-abiding citizens within the community." An institutional classification committee, which has access to complete information concerning individuals sentenced to 90 days or more, determines the custodial and rehabilitative program of each prisoner, and reviews that program for "reclassification 'periodically in accordance with the department regulations,' or whenever the committee shall deem it advisable." 11 Del.Code § 6530. A significant portion of the information referred to in § 6530 is of a psychological nature, ascertained by professionals working in a pre-trial classification unit.[8] The institutional classification committee is composed only of prison administrative officials.[9] There is no review of the committee's initial classification decision,[10] and the regulations do

---

stitutionality of parole release procedure challenged by prisoners whose parole had been denied; since earlier release might result from due process procedures, complaint is really habeas corpus petition).

7. Neither good time credits provided for in 11 Del.Code §§ 4371–4372 nor eligibility for parole, outlined in 11 Del.Code § 4346(a), (b), (d), and § 4347 is specifically dependent upon the initial classification of a prisoner.

8. Those prisoners sentenced to one year or more are interviewed by a psychologist, tested and interviewed by a teacher, and are interviewed by a counselor. The actual classification team, pre-trial, consists of a coun-

selor, teacher, psychologist, and the building lieutenant. See Delaware Correctional Center, Inmate Reference Manual, Appendix B.

9. The committee consists of the assistant superintendent for treatment, assistant superintendent for custody, supervisor of social services, staff psychologist, chaplain, supervisor of education and supervisor of records. *Id.*

10. Any reclassification that "adversely affects" an inmate's status is reviewable by the superintendent of the institution and ultimately by the commissioner of corrections. *Id.,* Appendix A, at A–6.

not specify the frequency of review of classification decisions.[11]

The Constitution recognizes the difficulty faced by prison officials who must balance the imposition of restrictive measures necessary for prison security against the granting of freedom of movement and responsibility necessary for participation in meaningful rehabilitative programs. See Wolff v. McDonnell, 418 U.S. at 560, 94 S.Ct. at 2977; Gray v. Creamer, 465 F.2d 179, 183 (C.A.3, 1972). Ordinarily, federal courts will not second guess these prison administrative decisions, but the due process clause may in some circumstances permit an inquiry into the procedure followed or result reached. It is to the requirements of due process that this Court now turns in evaluating the constitutionality of the initial classification of the petitioners in the instant case.

Due process protection cannot be arguably invoked unless there is a liberty or property interest of the individual which has been or will be deprived. Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Palmigiano v. Baxter, 487 F.2d 1280, 1284 (C.A.1, 1973); Clutchette v. Procunier, 497 F.2d 809, 814–815 (C.A.9, 1974). The deprivation for punitive reasons of prisoner's preexisting privileges while incarcerated[12] has invoked the due process clause, see Wolff v. McDonnell, supra, as has their deprivation in some cases for non-punitive reasons. See Gomes v. Travisono, 490 F.2d 1209 (C.A.1, 1974); Newkirk v. Butler, 499 F.2d 1214 (C.A.2, 1974), cert. granted sub nom. Preiser v. Newkirk (1974) 419 U.S. 894, 95 S.Ct. 172, 42 L.Ed.2d 138; Stone v. Egeler, 377 F.Supp. 115 (W.D.Mich.1973); Jenkins v. Keve, C.A. 74–101 (D.Del. 7/11/74), at 6–7. Furthermore, by analogy some courts have held that a prisoner's interest in liberty which has not been conferred, but for which he may be statutorily eligible, invokes the due process clause in parole release proceedings. United States ex rel. Johnson v. Chairman of New York State Board of Parole, 500 F.2d 925 (C.A.2, 1974); Craft v. Attorney General, 379 F.Supp. 538 (M.D.Pa.1974). Thus, it is reasonable to conclude for the purposes of this preliminary inquiry that a prisoner with respect to the initial classification proceeding has an interest in retention of the maximum amount of liberty while in prison and in proper rehabilitation.

However, once determined that a prisoner has a stake in his initial classification, it becomes necessary to consider what procedures due process requires in the initial classification process. To answer this, this Court must weigh the strength of the prisoner's interest, as above defined, with that of the government in a prompt determination of the probable security risk he presents and of his potential for rehabilitation. See Morrissey v. Brewer, 408 U.S. 471, 483–484, 92 S.Ct. 2593, 33 L.Ed.2d 484, Wolff v. McDonnell, 418 U.S. at 560, 94 S.Ct. at 2977. Ordinarily, the pre-trial unit classification team, a neutral body which makes written recommendations on the basis of various objective criteria, and the institutional classification committee, which is charged by Delaware statute[13] with the impartial promotion of rehabilitation of each prisoner, are appropriate mechanisms at this stage of incarceration to accommodate the interests of the prisoner and of the state. See Wolff v. McDonnell, 418 U.S. at 568–571, 94 S.Ct. at 2981–2982, for discussion of the importance of objective

---

11. The regulations do provide, however, that classification is an on-going process and that the inmate can request consideration of his reclassification. *Id.*, Appendix B, at 1.

12. Morrissey v. Brewer, 408 U.S. 471, 92 S. Ct. 2593, 33 L.Ed.2d 484 (1972), the first Supreme Court decision concerning procedural due process rights of prisoners, dealt with the revocation of parole, i. e., deprivation of conditional liberty, rather than of liberty under conditions of total incarceration.

13. See 11 Del.Code §§ 6530, 6531.

criteria and of a neutral decision maker. Indeed, the only situation in which the interest of the prisoner might possibly outweigh that of the state, so as to allow the prisoner the opportunity to present additional background or psychological evidence to the classification committee with respect to his initial classification, is when he would have been placed in a non-prison environment immediately following his sentence, but for the committee's decision. *See* Catalano v. United States, 383 F.Supp. 346 (D.Conn. 1974). Thus, the Court concludes that the classification procedure utilized by the Delaware Correctional Center complies with current procedural due process requirements.[14]

Concededly, erroneous decisions can be reached by this classification system, perhaps even on the basis of motives that are so antagonistic to the prisoner's rehabilitation that the action of the prison officials is arguably a violation of substantive due process. Some courts, in the context of prison disciplinary proceedings that are conducted under procedural due process guarantees, have alluded to the possibility of judicial review of the factual basis of an administrative decision to prevent any substantive due process violations,[15] i. e., arbitrary and capricious action. However, in Wolff v. McDonnell, the Supreme Court declined to prescribe such review as a minimum due process requirement in the context of major deprivation of prison privileges or the loss of statutory good time credit,[16] and consequently, this Court is hesitant to exercise such review in the instant case, where petitioners were initially classified on the basis of neutral and objective information in what is a continuing and on-going process. In addition, Third Circuit cases have only reviewed the factual basis of prison officials' decisions denying a benefit, such as reduced classification, where that benefit by statute or regulation had a *direct* bearing on the opportunity of the prisoner to accumulate statutory good time credit.[17] The petitioners' initial maximum classification in this case has no

14. It is not clear whether the classification committee minutes contain any information other than a notation of the classification selected for a particular inmate. However, the Supreme Court requires a more comprehensive report only where a disciplinary committee inflicts major deprivation on a prisoner, Wolff v. McDonnell, 418 U.S. at 562–571 n. 19, 94 S.Ct. at 2978–2982 n. 19, and this Court will not extend that requirement where the decision making process has no punitive or collateral consequences, *id.* 563, 94 S.Ct. at 2978–2979, and where the information which should form the basis of the classification committee decision is discovered in a neutral rather than an adversary context. Clearly, the defendants are not compelled to show "due cause" as a matter of procedural due process.

15. United States ex rel. Johnson v. Chairman, New York State Board of Parole, 500 F.2d 925, 929–931 (C.A. 2, 1974) ; Wilwording v. Swenson, 502 F.2d 844, 851 (C.A. 8, 1974), citing McDonnell v. Wolff, 483 F.2d 1059, 1063 (C.A. 8, 1973) ; Braxton v. Carlson, 483 F.2d 933, 940 (C.A. 3, 1973) ("due process is present when facts are rationally determined in a proceeding" where certain procedural guarantees are utilized) ; United States ex rel. Tyrrell v. Speaker, 471 F.2d 1197, 1203 (C.A. 3, 1973). But see, Gray v. Creamer, 465 F.2d 179, 185 (C.A. 3, 1972) (state prison), (citing same authority, the court emphasized that the procedure promotes rational determination of the facts).

Other courts have not explicitly faced the issue. *See, e. g.,* United States ex rel. Miller v. Twomey, 479 F.2d 701, 715 (C.A. 7, 1973).

16. The Court noted that a written report listing the reasons for the disciplinary committee's decision would facilitate possible review by the courts of deprivation of fundamental constitutional rights, thereby impliedly excluding routine review for arbitrary action. 418 U.S. at 562–565, 94 S.Ct. at 2978–2979.

But where procedural due process guarantees are inapplicable to a substantial deprivation of a prisoner's privileges, the federal court may review the decision of the administrator for a rational basis. Watkins v. Johnson, 375 F.Supp. 1005 (E.D.Pa.1974).

17. Marnin v. Pinto, 463 F.2d 583, 586 (C.A. 3, 1972) (per curiam) ; Mertz v. Pinto, 459 F.2d 1041 (C.A. 3, 1972), affirming 343 F. Supp. 374, 376 (D.N.J.1971). These cases deal with the denial after the initial classifi-

direct correlation with the number of such credits or the opportunity to accumulate them.[18]

A recent decision disposing of a prisoner's petition similar to the one in the instant case is Palmigiano v. Mullen, 491 F.2d 978 (C.A.1, 1974), which involved the alleged violation of the substantive due process rights of a maximum security prisoner whose request for reclassification had been repeatedly denied. According to *Palmigiano,* judicial review of a prisoner's maximum security classification is warranted only if the classification was done "for reasons utterly beyond the scope of any legitimate authority granted to [the classification board]." Neither one or several impermissible considerations, nor a wholly arbitrary determination would suffice under this standard:

> "To the extent [the prisoner] complains simply that the decision reflects an erroneous judgment, his only remedy is that provided by state law and procedures. . . ." [19]

 In light of the above authority, this Court holds that it will not review the factual basis of initial classification decisions reached by the institutional classification committee of the Delaware Correctional Center unless those decisions are demonstrated to have been made for reasons wholly irrelevant to considerations of custody and rehabilitation and for reasons designed to infringe fundamental constitutional rights.[20] In the case at bar, the petitioners specifically claim deprivation of the right to academic programs, which had been available to them while in pretrial detention. Manifestly, this activity is not one that rises to the level of a fundamental constitutional right deserving of federal judicial interference with internal administration of state prisons. Queen v. South Carolina Department of Corrections, 307 F.Supp. 841, 846 (denying even the possibility of judicial review at 845) (D.S.C.1970); United States ex rel. Cleggett v. Pate, 229 F. Supp. 818, 819 (N.D.Ill.1964); Pinkston v. Bensinger, 359 F.Supp. 95, 99 (N.D. Ill.1973); Diehl v. Wainwright, 419 F. 2d 1309 (C.A.5, 1970). As stated by the Third Circuit in Marnin v. Pinto, 463 F.2d 583, 586 (C.A.3, 1972), "there should be federal court intervention into state prison affairs only under *extreme provocation.*" That situation is clearly not present here.

Accordingly, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

## ORDER

For the foregoing reasons, it is ordered that the complaint be and the same is hereby dismissed.

---

cation of various benefits as described in the above text. There are no cases which grant review of the *initial* classification decision.

18. In Delaware, the possibility of furlough, work release, or educational release is not statutorily correlated with the initial maximum, medium or minimum classification. See Delaware Correctional Center, Inmate Reference Manual, Appendix F (III) (B) (Furlough); G (at page 2, question 1, answers a–c) (Work/Education Release) (possible at best, one year before parole date has been set).

19. *Id.* at 980. This Court expresses no opinion concerning the propriety of judicial review of the refusal of prison officials to reclassify a prisoner, absent the specific circumstances found in the Third Circuit cases discussed in note 16 *supra.*

20. The standard this Court applies is that articulated by the court in Marnin v. Pinto, 463 F.2d 583, 586 (C.A. 3, 1972). Even if the standard of review of the initial classification decision is "arbitrary and capricious action," the Court holds that the action taken by the defendants in the instant case in classifying the petitioners in maximum security is anything but that, because a detainer had been lodged against both petitioners for escape from a South Carolina correctional center and because Oscar Jordon had been sentenced by the state court to 18 months on a charge of assault upon a police officer.