**Bobby Ray KINES, Plaintiff, Appellant,**

v.

**John DAY, et al., Defendants, Appellees.**

**No. 84–1425.**

United States Court of Appeals, First Circuit.

Argued Oct. 1, 1984.

Decided Feb. 5, 1985.

G. Richard Shell, Boston, Mass., with whom Nonnie S. Burnes and Hill & Barlow, Boston, Mass., were on brief, for plaintiff, appellant.

Roberta Thomas Brown, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and WEIGEL,* Senior District Judge.

WEIGEL, Senior District Judge.

Bobby Ray Kines, an inmate at the Massachusetts Correctional Institute in Walpole, brought this Section 1983 action challenging the constitutionality of the prison's "Publishers Only Rule". The Rule limits the sources from which prisoners may receive reading material. The district court decided that the Rule did not on its face violate the First Amendment and limited trial to the question of the constitutionality of the Rule as applied. Evaluating the evidence on that basis, the district court held Kines' challenge to the Rule as applied was not ripe for decision and did not present a justiciable controversy.

We affirm.

## I.

The MCI-Walpole Publishers Only Rule has been in effect since December 14, 1979. Its central provision is that "[a]n inmate may receive hardcover, softcover and newspaper publications only from the publisher, from a book club, from a book store or news store." 103 WAL 650.04(4.1). The Rule provides for a limited exception: "The Superintendent or his designee may, under special circumstances, approve soft cover books to enter, after inspection, via visits." 103 WAL 650.05(5.2). Prison regulations also limit prisoners to receiving one package of personal property per month. 103 WAL 403.08(B)(3). This limit applies to packages containing books and magazines, as well as other forms of personal property. Inmates are allowed to subscribe to

newspapers and magazines, apparently without limit.

Inmates in the general population at MCI-Walpole have access to an institutional library with a general (non-law) collection of 4,000 to 5,000 books, four daily newspapers, three weeklies, one monthly, and 27 magazine subscriptions. The institution librarian testified that inmates can also make written requests for books not available in the library and that she undertakes to fill such requests by borrowing from the Walpole Public Library and other libraries in the region.

Library records show that Kines was in the library nine times between December 1983 and March 1984. The librarian recalled that Kines had inquired after particular books and that she told him the library did not have them. Kines declined to fill out a request slip for those books although the librarian informed him that he could do so.

At trial Kines listed a number of books he wanted that were not in the institution library. Some appear to be out of print. There was no showing that the listed books were unavailable from the outside libraries.

There was also testimony that friends had sent books to Kines through a bookstore and that some were delivered.[1] In addition, Kines was once allowed to receive two paperback books on woodworking that had been brought by a visitor.

## II.

In rejecting Kine's challenge to the Publishers Only Rule as written, the district court correctly held that the Rule does not on its face violate the First Amendment. The Supreme Court's decision in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1971), compels this conclusion. In *Bell* the Court upheld a "publishers only" rule in place at the New York Metropolitan Correctional Center. The

---

* Of the Northern District of California, sitting by designation.

**1.** The book *Poems of Mao Tse Tung* was excluded, while two others in the same package were admitted and received by Kines. The basis for exclusion was not clear. Kines has raised no claim that Prison Authorities have engaged in censorship.

**30**

Court acknowledged that "convicted prisoners do not forfeit all constitutional protections" but noted that "[t]he fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights." *Id.* at 545–46, 99 S.Ct. at 1877–78 (citations omitted). The Court further noted that prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 546–47, 99 S.Ct. at 1877–78.

In examining the publishers only rule before it in *Bell*, the Supreme Court considered such factors as: (1) The security risks associated with hardcover books (they can be used to secrete contraband); (2) the content-neutral operation of the rule; (3) the availability of other sources for written works, including the institution library; and (4) the brief terms of confinement for most inmates at the Metropolitan Correctional Center. The Court concluded that the publishers only rule challenged in *Bell* was reasonable as to time, place and manner and necessary to further significant governmental interests. *See Id.* at 552, 99 S.Ct. at 1881.

While there are differences between the MCI-Walpole Publishers Only Rule and that upheld in *Bell*, the analysis employed by the Supreme Court in *Bell* is nonetheless applicable. Although the rule considered in *Bell* applied only to hardback books, and the decision specifically emphasized the security risks associated with hardbacks (441 U.S. at 550–51, 99 S.Ct. at 1880–81) many of these risks are posed by paperbacks as well. *See Cotton v. Lockhart,* 620 F.2d 670, 672 (8th Cir.1980) ("[R]eceipt of softcover as well as hardback books poses a substantial security problem[.]"). In light of the deference accorded prison administrators under *Bell*, we must conclude that the MCI-Walpole Rule serves a significant government interest in internal security.

Similarly, the fact that *Bell* involved a pre-trial detention center rather than a prison does not distinguish it from the present case. The decision in *Bell* did note the brief periods of incarceration for the inmates in question as a factor that mitigated the deprivation caused by the challenged rule. 441 U.S. at 552, 99 S.Ct. at 1881. However, in the present case, as in *Bell*, the more important mitigating factor is that "there are alternative means of obtaining reading material that have not been shown to be burdensome or insufficient." *Id.* at 551, 99 S.Ct. at 1881. In addition to having an institutional library, as did the inmates in *Bell*, inmates at MCI-Walpole have available a procedure for requesting books from other libraries. Moreover, the MCI-Walpole Rule provides on its face for exceptions when paperbacks are brought in by visitors.

The district court was also correct in its determination that the MCI-Walpole institutional order limiting inmates to receiving one package per month did not render the Publishers Only Rule invalid on its face. The order might be significant in determining whether the Publishers Only Rule is constitutional *as applied,* if it were shown that the order limiting packages, in combination with the Publishers Only Rule, significantly restricts inmates' access to reading material. Without such a showing, however, the one package per month restriction does not distinguish the Rule in this case from that upheld in *Bell.*

### III.

A determination that a rule is not unconstitutional on its face does not foreclose challenges to its actual operation. An inmate may sue if an otherwise valid rule is being applied to him in an unconstitutional manner. However, challenging a rule as applied often requires more specific allegations of harm than are necessary to test facial validity. A constitutional challenge to a rule as written may constitute a case or controversy appropriate for adjudication in an Article III forum even without a showing of specific or immediate harm.

*See, e.g., Dombrowski v. Pfister,* 380 U.S. 479, 486, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22 (1965). However, once the rule has been adjudged constitutional on its face there is no presumption of harm. To present a justiciable claim a "plaintiff ... must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979).

■ In other words, a challenge to a rule or statute may be ripe for adjudication on the question of facial constitutionality and yet not be ripe for adjudication on the question of constitutionality as applied. *See, e.g., Grayned v. City of Rockford,* 408 U.S. 104, 121 & n. 50, 92 S.Ct. 2294, 2306 n. 50, 33 L.Ed.2d 222 (1972) (upholding noise control ordinance but reserving decision on constitutionality of possible applications); *Times Film Corp. v. City of Chicago,* 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961) (upholding ordinance requiring licensing of films prior to public exhibition) *and Teitel Film Corp. v. Cusack,* 390 U.S. 139, 88 S.Ct. 754, 19 L.Ed.2d 966 (1968) (invalidating same ordinance as applied); *Adler v. Board of Education,* 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517 (1952) (upholding New York statutory scheme for identifying and removing subversive school teachers) *and Keyishian v. Board of Regents,* 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967) (invalidating portions of same statutory scheme as applied). Although Kines's challenge to the constitutionality of the MCI-Walpole Rule as written was justiciable, once that challenge was correctly denied, the justiciability of Kines's "as applied" challenge presented a separate question.

As the court below observed:

Absent proof of circumstances of actual denial of access to identified published materials, this court cannot reach the constitutional issue posed by plaintiff .... Plaintiff has never applied to the Superintendent for permission to receive an out-of-print book, unobtainable from the publisher, from an alternative source. Opinion, May 4, 1984, at 6.

■ In this case, the evidence before the trial court was not sufficient to show that the Rule as applied violated Kines' constitutional rights. Speculation, rather than solid evidence, would have been the only basis for any such conclusion. Therefore, the district court was correct in concluding that Kines' constitutional claims based upon application of the Rule were not ripe for decision. As the Supreme Court noted in *Bell,* in adjudicating the constitutionality of a publishers only rule, " 'we [are] called upon to balance First Amendment rights against [legitimate] governmental ... interests.' " 441 U.S. at 552, 99 S.Ct. at 1881 (quoting *Pell v. Procunier,* 417 U.S. 817, 824, 94 S.Ct. 2800, 2805, 41 L.Ed.2d 495 (1974) and *Kleindienst v. Mandel,* 408 U.S. 753, 765, 92 S.Ct. 2576, 2582, 33 L.Ed.2d 683 (1972)). Any decision maker would be foolhardy to undertake such a delicate task without a fully developed record. The district court properly declined appellant's invitation to speculate.

The judgment of the district court is AFFIRMED.