BAYSIDE ENTERPRISES,
INC., Plaintiff,

v.

John HANSON, et al., Defendants.

Civ. No. 87-0367-B.

United States District Court,
D. Maine.

Dec. 17, 1987.

Christopher D. Nyhan, Michael Kaplan, Preti, Flaherty, Beliveau & Pachios, Portland, Me., for plaintiff.

Paul Stern, Asst. Atty. Gen., Augusta, Me., for defendants.

Robert J. Allen, Kim M. Vandermeulen, Vandermeulen, Goldman, Allen & O'Brian, Augusta, Me., for intervenor.

## ORDER DENYING PRELIMINARY INJUNCTION AND DISMISSING COMPLAINT

CYR, Chief Judge.

The plaintiff, Bayside Enterprises, Inc. [Bayside], moves pursuant to rule 65 of the Federal Rules of Civil Procedure for a preliminary injunction enjoining defendants, the Maine Agricultural Bargaining Board [MABB] and its members, from enforcing the Maine Agricultural Marketing and Bargaining Act of 1973 [MAMBA], Me.Rev. Stat.Ann.tit. 13, §§ 1953–1965 (West 1981 and Supp. 1986–87), *as amended*, L.D. 912 (1987) [MAMBA amendments], by requiring Bayside to bargain, enter into mediation, submit to arbitration, or contract with the Pine Tree Poultry Bargaining Committee [Pine Tree].

## I. BACKGROUND

Bayside is an integrated poultry processor which delivers chicks for raising by

Independent growers, then reacquires the grown birds for processing and marketing. Under the MAMBA, Me.Rev.Stat.Ann.tit. 13, §§ 1953–65, Bayside is defined as a "handler," Me.Rev.Stat.Ann.tit. 13 § 1955(3), and the independent growers which raise the chickens for Bayside are known as "producers." Me.Rev.Stat.Ann. tit. 13, § 1955(5). Pine Tree is a "qualified association of producers," Me.Rev.Stat. Ann.tit. 13, §§ 1955(1), 1955(6), certified to bargain with poultry handlers on behalf of its individual association members. *See* Me.Rev.Stat.Ann.tit. 13, § 1957. MABB is the state agency charged with administering and enforcing MAMBA.

The Maine Legislature recently enacted amendments to MAMBA which became effective on September 29, 1987. According to MABB, the purpose of these amendments was to bolster the bargaining position of producer associations, such as Pine Tree, in their dealings with handlers. Three years of unsuccessful contract negotiations between Pine Tree and Bayside served as an impetus to enactment of the amendments. *See* Legislative Record H–604 (May 18, 1987). MAMBA previously required bargaining between handlers and producer associations, followed by *nonbinding* arbitration. In order to expedite the resolution of disputed issues, the MAMBA amendments require the period of mandatory bargaining to be followed by mandatory mediation, which is to be followed by mandatory arbitration of unresolved issues. Me.Rev.Stat.Ann.tit. 13, §§ 1958(1), 1958–B. The arbitration is binding, and MAMBA purports to require that the parties sign a contract following binding arbitration. Me.Rev.Stat.Ann.tit. 13, § 1958–B(5). However, the parties agree that the statute does not require Bayside actually to place birds with Pine Tree members. Rather, it is only if Bayside *opts* to do business with Pine Tree members that the terms of the contract would govern.

The compulsory process of bargaining, mediation and arbitration is set in motion by MABB's establishment of a "contract date." The contract date is defined as follows:

The term "contract date" as used in subsection 2, shall have the following meaning.

A. Where, on the effective date of this section, there is no contract under this article in existence between the parties, the contract date shall be the date set by the board, in consultation with the parties, as the date by which a contract must be signed by both parties. After that date, as between those parties, the contract date shall be the anniversary of the date set by the board initially.

B. Where, on the effective date of this section, a contract under this article exists between the parties, the contract date shall be the anniversary of the date upon which that contract was signed by both parties.

Me.Rev.Stat.Ann.tit. 13, § 1958–B(4).

Once the contract date is set, mediation is to follow:

Any matters remaining in dispute between the handler and a qualified association 30 days prior to the contract date, as defined in subsection 4, shall be submitted by the parties to required mediation. No later than 30 days prior to the contract date, the parties shall have mutually agreed on a mediator and on sharing the costs of mediation or shall have notified the board that the services of the State's Panel of Mediators will be needed. If services of the State's Panel of Mediators are used, the parties shall share all costs of mediation equally. Mediation shall continue for no more than 3 days for annual crops; all other commodities shall last no more than 5 days, unless the mediator earlier declares that resolution by mediation is not possible. Mediation may be extended by mutual agreement by the bargaining parties. At the end of the mediation period or upon the mediator's earlier declaration, the mediator shall promptly prepare a report specifying all agreements reached in mediation and recommending that the parties either resume bargaining as to all matters remaining in dispute for a period of time not to exceed 2 days or that the parties submit all matters re-

maining in dispute to arbitration. The parties shall proceed according to the mediator's recommendation. If the parties are to resume bargaining, that bargaining shall commence on the day after the day on which the mediator makes his recommendation. Any matters remaining in dispute at the end of the specified bargaining period shall be submitted to arbitration.

Me.Rev.Stat.Ann.tit. 13, § 1958–B(2).

Mandatory binding arbitration follows: At the commencement of required mediation, the parties shall so notify the board and the commissioner and an arbitrator shall be selected as provided in paragraph D. One day after the mediator recommends arbitration or one day after the conclusion of the period of further bargaining, as provided in subsection 2, each party shall submit to the arbitrator its final offer, in which it shall identify all matters as to which the parties agree, with contractual language setting forth these agreements, and all matters as to which the parties do not agree, with contractual language setting forth the party's final offer for resolution of those disagreements.

A. As to all matters submitted to arbitration, the arbitrator shall choose between the final offers of the parties. If the parties reach an agreement on the matters under arbitration before the arbitrator issues his decision, they may submit a joint final offer which the arbitrator shall accept and render as his decision. The arbitrator may hold hearings and administer oaths, examine witnesses and documents, take testimony and receive evidence and issue subpoenas to compel the attendance of witnesses and the production of records. A person who fails to obey the subpoena of an arbitrator may be punished for contempt of court on application by the arbitrator to the Superior Court for the county in which the failure occurs. The arbitrator may utilize other information in addition to that provided by or elicited from the parties. The arbitrator shall issue a decision within 10 days of the commencement of arbitration and that decision shall be binding on the parties.

B. Within 2 days of the arbitrator's decision, the board shall prepare a contract which shall include all terms agreed to by the parties in bargaining or settled by voluntary or required mediation or by arbitration and shall present the contract to the parties, who shall sign the contract within 2 days of its presentation.

C. The commissioner, in consultation with the board, shall establish a panel of arbitrators, who shall be qualified by education, training or experience to carry out the responsibilities of an arbitrator under this article.

D. Upon notification by the parties as provided in this subsection, the commissioner shall submit to the parties a list containing an odd number of names of members of the panel of arbitrators who are available for arbitration. The parties shall alternately strike names from the list until a single name is left, who shall be the arbitrator. The order of striking names shall be determined by chance.

E. All costs of arbitration shall be borne equally by the parties. The arbitrator shall submit a statement of charges and expenses to the parties and to the board. Each party shall pay the arbitrator directly.

Me.Rev.Stat.Ann.tit. 13, § 1958–B(5).

There is no dispute that the MAMBA amendments apply to Bayside and Pine Tree by virtue of the pre-amendment definition of "bargaining," which states that the bargaining requirement "on the part of any handler shall extend only to a qualified association that represents producers with whom such handler has had a prior course of dealing." Me.Rev.Stat.Ann.tit. 13, § 1958(1). Bayside has had a prior course of dealing with several Pine Tree members.

On October 27, 1987, after notice and hearing, MABB set a contract date of December 15, 1987, but reserved the right to set a later contract date in the event that a proposed sale of Bayside to new owners

were to be completed prior to December 15. Although Pine Tree apparently was informed that the sale would be consummated on November 10, 1987, the sale has not taken place.

On November 10, 1987, Pine Tree requested that a mediator be selected, and on November 23, 1987, Bayside, reserving its challenges to the constitutionality of the MAMBA amendments, joined the request. A mediator was selected on November 25, 1987, and mediation was conducted on December 1 and December 3.

Bayside's stated purpose in complying with the MAMBA procedures is "to avoid the imposition of severe sanctions." Me. Rev.Stat.Ann.tit. 13, § 1959(5) states:

In an action to enforce an order or in a separate action, the board may seek civil penalties for violation of this article. In any such action, a violation shall be punishable by a civil penalty of not more than $5,000. When the violation is a refusal to bargain under section 1958 or an unfair practice under section 1965, each day that such conduct occurred shall constitute a separate violation. If a qualified association is found to have committed a violation under sections 1958 and 1965, and if a civil penalty is imposed, and if the court finds that the association is unable to pay the civil penalty, the court shall instead issue an order suspending for one year the association's rights as a qualified association under this article.

By the express terms of the amendments, MABB may not seek to invoke civil penalties except in a civil "action to enforce an order or in a separate action" against an alleged violator. An alleged violator may request an administrative stay and, failing that, injunctive relief from stay pursuant to Me.Rev.Stat.Ann.tit. 13, § 1959(3) and Me. Rev.Stat.Ann.tit. 5, § 11004. Although the parties agree that the fixing of the contract date by MABB constituted an "order," Bayside has not challenged it, nor has Bay-

side sought to raise any of its present claims in any state forum.

## II. DISCUSSION

Bayside's complaint raises several federal constitutional challenges to the MAMBA amendments. Count I alleges that the amendments are preempted by the Agricultural Fair Practices Act, 7 U.S.C. §§ 2301–06 (1982) [AFPA]. Count II alleges that the bargaining scheme coerces Bayside into contractual relations, in violation of the due process clauses of the fifth and fourteenth amendments. Count III alleges that the MAMBA amendments have been applied unconstitutionally (in violation of the fifth and fourteenth amendments), in that MABB allegedly has had *ex parte* communication with and is biased in favor of Pine Tree, in that MABB has failed to promulgate regulations to guide decisionmaking under the amendments, and in that MABB provided insufficient notice of the October 27, 1987 "contract date meeting." Count IV alleges that, because MAMBA provides insufficient guidelines for decisionmaking by mediators, arbitrators, and MABB, the amendments *permit* an unconstitutional taking of Bayside property. Finally, Bayside asserts that the threat of excessive civil penalties denies Bayside an effective right to judicial review of the constitutionality of the MAMBA amendments, in violation of its due process rights.

### A. *Jurisdiction*

Bayside invokes the jurisdiction of the court pursuant to 28 U.S.C. §§ 1331 and 1343(3).

▋ The court concludes that ripeness concerns militate against a finding of federal jurisdiction to resolve any claim asserted in this complaint. Although further administrative action by MABB or judicial proceedings in the state court could result in a ripe "case or controversy" as to plaintiff's preemption, freedom of contract, or unconstitutional taking claims,[1] the injuries

---

1. *See* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3532.1:

Concern for the relationships between federal courts and state institutions may weigh in

the ripeness balance in ways that parallel the concern for the relationships between federal courts and other federal branches. Reasonably straight-forward calculations are in-

complained of are speculative at this point. Once the MAMBA amendments have been invoked in some such state action against Bayside there may be sufficient factual foundation upon which to determine whether Bayside would be exposed to the infringement of its freedom to contract, compelled to "deal" with Pine Tree members in violation of AFPA, or to relinquish a property right without just compensation. *Cf. Public Service Commission of Utah v. Wycoff Co., Inc.,* 344 U.S. 237, 247, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952) ("State administrative bodies have the initial right to reduce the general policies of state regulatory statutes into concrete orders and the primary right to take evidence and make findings of fact. It is the state courts which have the first and the last word as to the meaning of state statutes and whether a particular order is within the legislative terms of reference so as to make it the action of the State. *We have disapproved anticipatory declarations as to state regulatory statutes ....*") (emphasis added); *see also Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 3117, 87 L.Ed.2d 126 (1985). In this case, Bayside's anticipated "worst case" scenario may never be borne out.

In *Kines v. Day,* 754 F.2d 28 (1st Cir. 1985), the First Circuit noted that "a challenge to a rule or statute may be ripe for adjudication on the question of facial constitutionality and yet not be ripe for adjudication on the question of constitutionality as applied." 754 F.2d at 31. "To present a justiciable claim a 'plaintiff ... must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.' " *Id.* (quoting *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979)).

At the preliminary injunction hearing, Bayside, Pine Tree and MABB agreed that Bayside could not be compelled to place chickens with Pine Tree's members, even if Bayside were to be subjected to binding arbitration with Pine Tree pursuant to the MAMBA amendments. Yet Bayside's preemption, freedom of contract, and unconstitutional taking claims, in counts I, II and IV, respectively, necessarily presume that Bayside would be forced to contract, or deal, with Pine Tree.[2] These claims clearly are unripe. Moreover, because no party contends that the MAMBA amendments, on their face, require that Bayside place chickens with Pine Tree members, on the present record there is no *facial* challenge to the MAMBA amendments.

Bayside asserts in counts III and V that the fixing of the December 15 contract date

---

volved if the question involves the prospect of further action by state executive, administrative, or legislative officials. If state programs remain in an evolutionary phase, ripeness may be denied in the hope that further development by such state officials will reduce or avoid constitutional problems.

(Footnote omitted.) *See, e.g., Wheeler v. Barrera,* 417 U.S. 402, 426, 94 S.Ct. 2274, 2287, 41 L.Ed.2d 159 (1974) (dismissing as unripe a first amendment challenge to a state program allowing a public school teacher receiving federal funds from teaching classes at a parochial school, because "no order had been entered requiring on-the-premises parochial school instruction."); *Wycoff,* 344 U.S. at 246, 73 S.Ct. at 241 (dismissing, as unripe, action for judicial declaration that the plaintiff was engaged in interstate commerce, and therefore immune from state regulation of its transportation, when the state regulatory action was only anticipated and plaintiff could show no irreparable injury).

The court further notes that the existence of adequate administrative and judicial review procedures under the MAMBA amendments casts considerable, if not conclusive, doubt upon the viability of Bayside's claim under count V, i.e., that Bayside is denied effective judicial review. Rather, Bayside has elected not to avail itself of either administrative or judicial review under state law.

**2.** Bayside's preemption claim asserts that AFPA, which states that "nothing in this action shall ... require a handler to deal with an association of producers," 7 U.S.C. § 2305, preempts the MAMBA amendments to the extent that the MAMBA amendments require a handler to "deal" with an association of producers. Similarly, Bayside's freedom of contract and unconstitutional taking claims assert that Bayside is forced under the MAMBA amendments to contract against its will. The courts will adopt that reasonable construction of the statute which will avoid an unconstitutional result. *See Planned Parenthood Association of Kansas City v. Ashcroft,* 462 U.S. 476, 493, 103 S.Ct. 2517, 2526, 76 L.Ed.2d 733 (1983).

by MABB was done without due process and that it injures Bayside by forcing it into bargaining, mediation, and arbitration, with no meaningful right of review. These claims are illusory, inasmuch as any such injury is self-inflicted and may be terminated (if any such right exists) simply by resorting to available state administrative and/or judicial remedies.

The court recognizes that exhaustion of state administrative remedies is not required as a prerequisite to bringing an action pursuant to 42 U.S.C. § 1983. *Patsy v. Board of Regents,* 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982). In this case, however, Bayside has permitted whatever present injury may have been brought about by any constitutional violations asserted in counts III and V, by *failing* to seek readily available state administrative or judicial relief. *Cf. Williamson Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 192–93, 105 S.Ct. 3108, 3120, 87 L.Ed.2d 126 (1985) (ripeness of due process claim depends on "whether the initial decisionmaker has arrived at a definitive position on the issue *that inflicts an actual, concrete injury,"* and section 1983 action was not ripe where plaintiff failed to seek zoning variance) (emphasis added).

■ Moreover, "[d]ue process protection cannot be arguably invoked unless there is a liberty or property interest of the individual which has been or will be deprived." *Jordon v. Keve,* 387 F.Supp. 765, 769 (D.Del.1974) (citing *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *Palmigiano v. Baxter,* 487 F.2d 1280, 1284 (1st Cir.1973)). The only constitutionally protected property or liberty interests potentially implicated by the fixing of the contract date are Bayside's freedom to contract and its right to just compensation for any taking of its property. However, any such deprivations are entirely speculative at this point. The

challenge in count III to the fixing of the contract date is therefore unripe.[3]

As to count V, Bayside's contention that it is denied a meaningful right to judicial review is belied by the clear facial validity of the administrative stay and judicial review provisions of the MAMBA amendments. Me.Rev.Stat.Ann.tit. 13, § 1959(3). Thus, any possible challenge to those provisions is not sufficiently ripe to support federal jurisdiction under section 1343. *See Brody v. Moan,* 551 F.Supp. 443, 446–47 (S.D.N.Y.1982).

### B. *Abstention*

■ Were it to be found that the court possesses jurisdiction of any of these claims, the present challenges to this new and entirely uncharted state regulatory scheme counsel abstention from the exercise of federal jurisdiction in order to permit important issues of state law to be considered in the first instance in the state forums specifically designated for the purpose by the very statute which establishes the new regulatory scheme.

The court recognizes that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Guiney v. Roache,* 833 F.2d 1079, 1081 (1st Cir.1987) (quoting *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)). However,

> [a]lthough a federal equity court does have jurisdiction of a particular proceeding, it may, in its sound discretion, whether its jurisdiction is invoked on the ground of diversity *or otherwise,* "refuse to enforce or protect legal rights, the exercise of which may be prejudicial to the public interest"; it *"is in the public interest that the federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy."*

---

**3.** The court notes that Bayside's allegation of *ex parte* communications between MABB and Pine Tree raises a potential claim under *state* law, in that Bayside points primarily to Me.Rev.Stat. Ann.tit. 13, § 1956(7) (MABB staff shall not act as advocate for any party) in labeling the alleged communications illegal. A violation of state law by a state official, without more, is not a violation of the federal right to procedural due process. *Miller v. Carson,* 563 F.2d 757 (5th Cir.1977).

*Allstate Insurance Co. v. Sabbagh,* 603 F.2d 228 (1st Cir.1979) (quoting *Burford v. Sun Oil Co.,* 319 U.S. 315, 317–18, 63 S.Ct. 1098, 1098–99, 87 L.Ed. 1424 (1943)) (emphasis added).

In *Sabbagh,* the First Circuit upheld a federal district court decision to abstain where an insurance company bypassed state administrative and judicial review procedures established under a challenged state law setting insurance rates, deciding instead to seek declaratory and injunctive relief on federal and state constitutional grounds in federal court. Noting that the case involved "an area of intensely local interest" and that "the state ha[d] indicated the importance it placed on the coherence of its policy," the court found that *Burford* abstention was proper. *See* 603 F.2d at 233; *see also Friends of Children, Inc. v. Matava,* 766 F.2d 35, 36–37 (1st Cir.1985) (applying *Burford* abstention in § 1983 action).

The strong state interest in the MAMBA procedures is readily apparent in that the Maine Legislature repeatedly has sought to provide a mechanism for bolstering the bargaining power of poultry producer associations. Just one year after its attempt to regulate the bargaining relationship between handlers and producer associations had been held unconstitutional by the Maine Supreme Judicial Court, *see Bayside Enterprises, Inc. v. Maine Agricultural Bargaining Board,* 513 A.2d 1355 (Me. 1986), the Legislature enacted the challenged MAMBA amendments.

These MAMBA amendments establish a unified procedure to enable handlers and producers to review any order of MABB. *See* Me.Rev.Stat.Ann.tit. 13, § 1959(3). Those state court review procedures afford Bayside ample opportunity, prior to any significant threat of sanctions, to assert any alleged constitutional infirmity that might be raised in federal court, and there is no reason to question the ability of the state courts to deal competently and effectively with those issues. *Cf. Sabbagh,* 603 F.2d at 233 ("The [Massachusetts Supreme Judicial Court], with its special powers and expertise, could protect appellant's federal rights as well as, if not better than, a federal court could.");[4] *see also Allegheny Airlines, Inc. v. Pennsylvania Public Utility Commission,* 465 F.2d 237, 241–42 (3d Cir.1972), *cert. denied,* 410 U.S. 943, 93 S.Ct. 1367, 35 L.Ed.2d 609 (1973).

Since the court abstains on the basis of the *Burford* doctrine, it does not retain jurisdiction of the case.[5] *See Sabbagh,* 603

---

**4.** It is significant that the Maine Supreme Judicial Court already has dealt extensively with MAMBA, gaining considerably greater familiarity with the statutory scheme than this court can have acquired at this preliminary stage. *See Medical Malpractice Joint Underwriting Ass'n of Rhode Island v. Pfeiffer,* 832 F.2d 240, 244 (1st Cir.1987) (*Burford* abstention proper where "the state court could deal more completely and efficiently with an important local issue governed primarily by local factors and with which it had much greater expertise"). At that time, the Law Court clearly indicated its sensitivity to federal constitutional concerns. *See Bayside Enterprises, Inc. v. MABB,* 513 A.2d 1355 (Me.1986).

**5.** If the court were to abstain on the basis of *Railroad Commission of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), jurisdiction would be retained. *Pullman* abstention is appropriate where a state court or administrative agency "might resolve a state law question in such a way as to significantly alter the litigation in federal court, allowing the federal court to avoid a constitutional question or to avoid impacting on a state's efforts to implement its important public policy." *Allstate Insurance Co. v. Sabbagh,* 603 F.2d 228, 234 n. 6

(1st Cir.1979). Had the court not decided to abstain on *Burford* grounds, it is likely that *Pullman* abstention would be found appropriate in that the MAMBA amendments could be applied to Bayside by MABB, or be interpreted by the state courts, in such a way that there *could be no contention* that Bayside's freedom to contract was impaired, its property taken unconstitutionally, or that the MAMBA amendments were preempted by AFPA. *Cf. Druker v. Sullivan,* 458 F.2d 1272 (1st Cir.1972) (applying *Pullman* abstention in a preemption case where the state law at issue was ambiguous).

Although, at the hearing, the parties otherwise agreed for present purposes, it remains entirely possible that the MAMBA amendments could be applied so as to require Bayside to conduct business with Pine Tree members. Indeed, Bayside now asserts in its post-hearing *Letter Memorandum on Issue of Pullman Abstention* that the possibility exists that any contract forced on Bayside by MABB might require Bayside to "deal" with Pine Tree members. While this clearly constitutes another unripe claim of injury, implicit in it is the recognition that some tribunal could interpret the MAMBA amendments in such a way as to enable MABB *to*

F.2d at 234. Accordingly, the court does not reach the motion for preliminary injunctive relief.[6]

It is hereby *ORDERED* that the complaint be *DISMISSED*.

SO ORDERED.

---

*compel a handler to deal with producers* under the terms of a contract forced upon the handler following involuntary binding arbitration. Thus, the ambiguity in state law, required for *Pullman* abstention, may be present. *See Druker,* 458 F.2d at 1274.

6. To be entitled to a preliminary injunction, Bayside would have to show (1) that it would suffer irreparable injury absent such relief; (2) that any harm to Bayside would outweigh any harm to the defendants; (3) that Bayside is likely to succeed on the merits; and (4) that the public interest favors preliminary injunctive relief. *See Planned Parenthood League of Mass. v. Bellotti,* 641 F.2d 1006 (1st Cir.1981).

Bayside's failure to seek a stay of MABB's order fixing the contract date, pursuant to the review mechanism provided by the MAMBA amendments, Me.Rev.Stat.Ann.tit. 13, § 1959(3), casts considerable doubt on the propriety of preliminary injunctive relief, in that it belies Bayside's allegation of irreparable injury. *See* 11 Wright & Miller, *Federal Practice and Procedure: Civil* § 2948; *Brawner Building, Inc. v. Shehyn,* 442 F.2d 847, 855 (D.C.Cir.1971) ("A property owner may be entitled to temporary relief in order to avoid irreparable injury, *and if relief cannot be provided through the administrative remedy,* there is a basis for a court's preliminary injunction.") (emphasis added); *cf. Skehan v. Board of Trustees of Bloomsburg State College,* 353 F.Supp. 542, 543 (M.D.Pa.1973) (delay in seeking preliminary injunction may bar relief).

Moreover, Bayside has submitted no competent evidence that denial of a preliminary injunction would result in irreparable injury. The only evidence of irreparable injury is the affida-

vit of Bernard Lewis, which states that, if Bayside is forced to sign a contract, "Bayside will be severely damaged and possibly forced out of business." Aff. of Bernard Lewis, at 5. More convincing, however, is Lewis' additional admission that "it is impossible to know in advance what an arbitrator will decide." Aff. of Bernard Lewis, at 4. Bayside's allegations of possible future injury, which can be forefended against by timely resort to established state administrative and judicial review procedures, will not suffice to show the irreparable injury required for preliminary injunctive relief. *See Bradley v. Detroit Board of Education,* 577 F.2d 1032, 1035 (6th Cir.1978) (injunction cannot be based on unfounded fears or speculative determinations).

Neither has Bayside submitted competent evidence supporting the allegation of *ex parte* communications between MABB and Pine Tree regarding the fixing of the December 15, 1987 contract date. The affidavits submitted by Robert Eldridge, Bryan Cunningham, Marie Grass, and Clayton Griggey relate to a meeting held *after the October 27, 1987 meeting at which the contract date was set,* and indicate that communications between MABB members and Pine Tree representatives might have occurred *after* the October 27 meeting. By contrast, the record clearly shows that Bayside reeived notice of and was given a full opportunity to present its views at the October 27 meeting. *See* Defendant's Memorandum of Law, Exhibits F, G, and H.

The failure of Bayside to show irreparable injury is a sufficient ground in itself for denying a preliminary injunction. *See Women's Community Health Center, Inc. v. Cohen,* 477 F.Supp. 542, 544 (D.Me.1979) (must satisfy all four criteria for granting preliminary injunctive relief).