**Mary Ann McGUIRE, Ruth Schiavone and Jean B. Zarella, Plaintiffs,**

v.

**Thomas REILLY, et al., Defendants.**

**No. CIV.A. 00–12279–EFH.**

United States District Court, D. Massachusetts.

July 9, 2003.

9 U.S.C. § 3.

Thomas M. Harvey, Law Office of Thomas Harvey, Boston, MA, for Plaintiffs.

Adam Simms, Attorney General's Office, Elizabeth K. Frumkin, Attorney General's Office, Patricia Correa, Attorney General's Office, William W. Porter, Attorney General's Office, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

HARRINGTON, Senior District Judge.

This matter involves Defendants' Renewed Motion for Summary Judgment as to plaintiffs' as-applied constitutional challenge to Mass.Gen.L. ch. 266, § 120½'s exemption for abortion clinic employees and agents. The Court previously denied Defendants' Motion for Summary Judgment on this issue. *McGuire, et al v. Reilly, et al.*, 230 F.Supp.2d 189 (D.Mass.2002).[1] In said decision and prior to setting a hearing on the merits to determine whether clinic employees and agents have engaged in oral protest, education or counseling within the restricted areas, the Court extended the discovery period for six months. This was done to afford the parties the opportunity to determine whether any such conduct is frequent or sporadic and whether the Act's exemption for clinic employees and agents is being applied in accordance with the Attorney General's interpretation of the Act requiring evenhanded enforcement of its prohibitions against all sides of the abortion debate, including clinic employees and agents. The Court also indicated to the parties that it would entertain a renewed Motion for Summary Judgment at the close of the extended discovery period.

At issue is the constitutionality, as applied, of the Massachusetts statute, Mass. Gen.L. ch. 266, Section 120E½, that regulates speech-related conduct within eighteen feet of reproductive health care facilities. The specific section of the statute that is challenged imposes both criminal and civil penalties on persons who knowingly approach another person, within six feet of such person, "for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling," unless the targeted individual consents to such approach.[2] Exempted from the statute are "persons entering or leaving such facility" and "employees or agents of such facility acting within the scope of their employment."[3] The question is whether the

---

**1.** Pursuant to the First Circuit's decision in *McGuire, et al. v. Reilly, et al.*, 260 F.3d 36 (1st Cir.2001), this Court shall not entertain any *facial* challenge to the Act's constitutionality. This Court must abide by the decision in *McGuire* that *on its face*, the Act, including its exemptions, is both content-neutral and viewpoint-neutral, and does not on its face violate the Constitution of the United States. The Defendants' Motion for Summary Judgment on the facial challenge was allowed in *McGuire, et al.*, 230 F.Supp.2d at 193 n. 10.

**2.** Mass.Gen.L. ch. 266, Section 120E½ (b). The statute reads in relevant part: "No person shall knowingly approach another person or occupied motor vehicle within six feet of such person or vehicle, unless such other person or occupant of the vehicle consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education or counseling with such other

person in the public way or sidewalk area within a radius of 18 feet from any entrance door or driveway to a reproductive health care facility or within the area within a rectangle not greater than six feet in width created by extending the outside boundaries of any entrance door or driveway to a reproductive health care facility at a right angle and in straight lines to the point where such lines intersect the sideline of the street in front of such entrance door or driveway." *Id.*

This specific section of the statute is ruled severable from the complete statute itself.

**3.** *See* Section 120E½ (b)(1–2). Also exempted are various law enforcement and emergency personnel, and persons using the public sidewalk or street right-of-way adjacent to such facility solely for the purpose of reaching a destination other than such facility. Section 120E½ (b)(3–4).

First Amendment rights of the speaker are abridged by the protection the statute, as applied, provides for the unwilling listener.

Plaintiffs Mary Anne McGuire, Ruth Schiavone and Jean B. Zarella are three private citizens who regularly travel to the sidewalks and public ways in front of and near reproductive health care facilities, attempting to dissuade women from having abortions by engaging in counseling activities, including distributing leaflets and engaging in oral conversations. Plaintiffs allege that their fear of criminal prosecution caused them to be chilled in their exercise of fundamental constitutional rights.

Plaintiffs filed a Complaint praying for a declaration that the Massachusetts statute is facially invalid and seeking an injunction against its enforcement. They alleged that Mass.Gen.L. ch. 266, Section 120E½ is facially unconstitutional because it violates their right to freedom of speech under the First and Fourteenth Amendments to the United States Constitution. Specifically, plaintiffs claim three causes of action: (1) a violation of the First Amendment's Freedom of Speech Clause; (2) a violation of the Equal Protection Clause of the Fourteenth Amendment; and (3) a violation of the Due Process Clause of the Fourteenth Amendment. The several named defendants are those state officers empowered to prosecute violators of the laws of the Commonwealth, and are represented by the Attorney General of the Commonwealth of Massachusetts.

The issue originally before this Court was whether, on its face, the statute is unconstitutional in any of the following four respects. First, whether the Act's explicit singling out of reproductive health care facilities indicates that it is a content-based regulation of speech. Second, whether the exemption for certain people, particularly employees and agents of the facilities, represents impermissible governmental protection for one side of the abortion debate, while abridging fundamental free speech rights of the other. Third, whether the process for physically marking the buffer zones amounts to a discriminatory activation provision. Fourth, whether the language of the statute, aimed primarily at oral communications, reveals that its true intent is the suppression of speech rather than any of the four stated purposes.[4]

This Court held the Act, Mass.Gen.L. ch. 266, Section 120E ½, facially unconstitutional because under the Act employees and agents of abortion clinics have the right to express their pro-abortion views within the restricted areas; whereas anti-abortion protestors are prohibited from expressing their anti-abortion views within the same areas. *McGuire, et al. v. Reilly, et al.*, 122 F.Supp.2d 97 (D.Mass.2000).

The Court of Appeals for the First Circuit held the Act facially constitutional, although the Act accorded differential treatment to the statutory right to express two disparate views on the subject of abortion, on the ground that it promoted public safety, personal security, smooth traffic flow and effective medical services.

---

**4.** Section 1 of S.B. No. 148 reads: "The purpose of this act is to:—(a) increase the public safety in and around reproductive health care facilities; (b) maintain the flow of traffic and prevent congestion around reproductive health care facilities; (c) enact reasonable time, place and manner restrictions to reconcile and protect both the first amendment rights of persons to express their views, assemble and pray near reproductive health care facilities and the rights of persons seeking access to such facilities to be free from hindrance, harassment, intimidation and harm; and (d) create an environment in and around reproductive health care facilities which is conductive to safe and effective medical services, including surgical procedures, for patients."

The Court of Appeals further ruled that there was no evidence that employees and agents had in fact exercised their statutory right to protest, educate or counsel.[5] *McGuire, et al.*, 260 F.3d 36. The Court of Appeals stated that if employees and agents do in fact exercise their statutory right to engage in preferential pro-abortion advocacy *"the plaintiffs remain free to challenge the act, as applied, in a concrete factual setting."*[6] *Id.* at 47. (Emphasis supplied)

The plaintiffs contend that the Act is unconstitutional, as applied, on the ground that employees and agents of the abortion clinics do in fact *exercise* their statutory right to engage in preferential pro-abortion advocacy within the restricted areas.

The issue now pending before this Court is whether the defendants have applied the statutory clinic and agent exemption to permit the expression of a pro-abortion viewpoint by clinic employees and agents, while simultaneously prohibiting plaintiffs from articulating an opposing, anti-abortion message within the same restricted areas.

The defendants have renewed their motion for summary judgment which presents the argument that any as-applied constitutional challenge brought by the plaintiffs must fail on the ground that the state has not yet applied the Act to the plaintiffs in a way that violates the plaintiffs' constitutional rights. In support of their argument, defendants point out that the Attorney General construes the Act to prohibit clinic employees and agents from expressing a pro-abortion viewpoint, or from attempting to counsel or educate patients, within the restricted areas at clinic entrances.[7] In February, 2003, the Office of the Attorney General communicated its interpretation of the Act, by letter, to the police departments of the four Massachusetts municipalities with reproductive health care facilities affected by the Act (i.e., Boston, Brookline, Worcester and Springfield).[8] These letters stated, in part, that "all persons in the restricted area, including clinic employees and

---

**5.** This Court had previously indicated that employees and agents had *exercised* their statutory right to protest, educate or counsel based on their financial and philosophical incentive to so do, their function as volunteer escorts "to help provide safe, unimpeded clinic access for women" (Exhibit 1), and common experience which teaches that a statutory right is ultimately exercised. *McGuire, et al.*, 122 F.Supp.2d 97. This finding has since been supported by evidence developed during discovery.

**6.** In an "as-applied" challenge, a plaintiff "contends that application of [a] statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional," *Ada v. Guam Soc'y of Obstetricians & Gynecologists*, 506 U.S. 1011, 1012, 113 S.Ct. 633, 121 L.Ed.2d 564 (1992) (Scalia, J., Rehnquist, C.J., and White, J., dissenting), *denying cert. to* 962 F.2d 1366 (9th Cir.1992), and asks only that the reviewing court declare the challenged statute unconstitutional on the facts of the particular case. *Sanjour v. Envi-*

*ronmental Protection Agency*, 56 F.3d 85, 92 n. 10 (D.C.Cir.1995).

**7.** If consent is obtained, the Act permits any person, regardless of their message, to speak to patients within the restricted areas. Mass. Gen.L. ch. 266, § 120E½ (b). Clinic employees and agents are, of course, authorized under the Act to insure the personal safety of the patients within the restricted areas.

**8.** This Court had previously noted that even prior to February, 2003 that:

The Attorney General's "interpretation" of the Act's employee and agent exemption has been articulated in a variety of ways. For example, the Attorney General's office has (1) sent written letters to law enforcement officials and abortion clinic personnel, (2) conducted explanatory PowerPoint presentations before members of the Boston and Brookline police departments, and (3) engaged in personal conversations with law enforcement and abortion clinic personnel. *McGuire, et al.*, 230 F.Supp.2d at 193, n. 8.

agents, are subject to the restrictions in Section 120E½ (b) of the Act, including the restriction on oral protest, education, or counseling[,]" and that clinic employees and agents may not use the exemption to "express their views about abortion[.]" [9]

Moreover, both the Boston and Brookline Police Departments have adopted the Attorney General's construction of the Act, thus rejecting the notion that the employee and agent exemption protects employees and agents who express their views on abortion to patients within the restricted areas. Both the Boston and Brookline Police have adopted an entirely evenhanded approach to enforcement of the Act, warning, when necessary, *both* pro-life protestors and clinic employee and agent escorts of potential violations of the Act and not to arrest anyone for violation of the Act without first issuing at least one warning. Both pro-life protesters and clinic escorts have received warnings by the Boston and Brookline Police.

Defendants point out that none of the plaintiffs has been arrested for violating the Act and that only one person (a pro-life protester) has been arrested for violating the Act, after repeated warnings from the Boston Police over a period of months. Accordingly, only one prosecution for violation of the Act has been commenced by the Suffolk County District Attorney, and there have been no prosecutions by the District Attorney of Norfolk County, or by the Attorney General.

In view of the foregoing, defendants argue there is no basis for plaintiffs' claim that the defendants have not applied the clinic employee and agent exemption in a content neutral manner. In addition, defendants assert that any complaint that the plaintiffs might raise concerning the conduct of clinic employees and agents, who are private parties, would not implicate "state action" and could not, for that reason, establish a constitutional violation. Moreover, none of the plaintiffs has complained to the police or to any other law enforcement authority about any oral protests, education or counseling being engaged in by employees and agents at clinic entrances.

In sum, the defendants claim that the Court should grant their renewed motion for summary judgment because they have fully adopted and are now applying the Attorney General's narrow, content-neutral interpretation of the employee and agent exemption requiring equal enforcement of the Act's prohibitions against all sides of the abortion debate, including clinic employees and agents. This was the interpretation endorsed by this Court in its earlier decision, *McGuire, et al.*, 230 F.Supp.2d at 193. In addition, defendants argue that any as-applied claim that plaintiffs might premise on the acts of clinic employees and agents does not properly challenge "state action" and should, therefore, be dismissed.

Plaintiffs oppose Defendants' Renewed Motion for Summary Judgment. Plaintiffs have presented evidence that abortion clinic employees and agents have utilized the Act's exemption as a means of engaging in preferential pro-abortion advocacy within the restricted areas. To date, however, the State has neither arrested nor prosecuted any clinic employee or agent under

---

**9.** Copies of these letters were also sent to the attorneys for each municipality's police department and to the assistant district attorneys responsible for prosecution under the Act in these areas—specifically, Suffolk, Norfolk, Worcester and Hampden Counties. Through these letters and other communications, the Attorney General's interpretation of the Act has been expressed to both law enforcement officials *and* the reproductive health care facilities at which the named plaintiffs engage in sidewalk counseling. Plaintiffs engage in counseling in Boston and Brookline.

the Act. Nevertheless, the plaintiffs make no argument to this Court that the police are not properly enforcing the Act as it has been construed by the Attorney General. The plaintiffs have introduced evidence regarding the speech conduct of clinic escorts *not* for the purpose of showing that the police are failing to enforce the Act as it has been construed by the Attorney General, but rather, to argue that the Act, by the fact of its very existence, allows and encourages exempted employees and agents to engage in pro-abortion counseling, yet prohibits the plaintiffs' anti-abortion protests within the restricted areas.

Plaintiffs appear to be reluctant, however, to acknowledge that circumstances have changed substantially since the Act was originally passed and the Court of Appeals issued its directive in *McGuire* regarding an as-applied challenge to the Act. Specifically, the Act has since been interpreted by the Attorney General so as to require evenhanded enforcement of its prohibitions, even against clinic employees and agents, and the Attorney General's interpretation has been adopted by the law enforcement authorities.[10] The plaintiffs have failed to offer any legal authority to support a ruling that the Act is unconstitutional, as applied, in these changed circumstances.

Although the Court of Appeals indisputably declared "[t]he Act, on its face, [to be] content neutral," *McGuire, et al.*, 260 F.3d at 48, it is of course possible for even a content neutral time, place and manner restriction to be applied in such a manner as to stifle free expression by favoring or disfavoring speech based on its content. *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 323, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002). If the state were to enforce the Buffer Zone Act by ignoring the speech activities of favored speakers (or by prosecuting, issuing warnings, or unduly beleaguering only disfavored speakers), such application of the Act would of course be unconstitutional and evidence thereof would augment plaintiffs' case considerably. *See id.* at 325, 122 S.Ct. 775. Plaintiffs have not produced such evidence.

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *See e.g., Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir.2000); *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995). For a case to be worthy of trial, then, there must be a *"genuine"* issue of *"material"* fact. In this context, a "genuine" issue is one "that a reasonable jury could resolve . . . in favor of the nonmoving party." *McCarthy*, 56

---

**10.** The Court notes that, on its face, the Attorney General's interpretation, like the Act itself, appears to be content-neutral. In addition to the plain meaning of the Attorney General's words, as expressed in the letters sent to law enforcement (discussed *supra*), there is no evidence that the construction was adopted because of a disagreement with the message behind any speech activities. *See McGuire, et al.*, 260 F.3d at 43 (*quoting Ward v. Rock Against Racism*, 491 U.S. 781, 791,

109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) ("the principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys.")). Rather, the purpose behind the Attorney General's construction appears to be legitimate and unrelated to expressive content. *See id.* at 44.

F.3d at 315. "Material" means that a contested fact has the potential to change the outcome of the suit under governing law if the dispute over it is resolved in favor of the nonmovant. *Id.* If the nonmoving party fails to show the existence of a genuine issue of material fact, summary judgment may be appropriate. *Id.*

■ In the instant case, plaintiffs have failed to show that there is a genuine factual dispute as to whether law enforcement officials are failing to enforce the employee and agent exemption in a manner consistent with the Attorney General's interpretation of the Act. The plaintiffs' evidence focuses almost exclusively on the conduct of clinic escorts, rather than on the conduct of law enforcement, and fails to raise the crucial material factual issue of whether the Act, as construed by the Attorney General, is not being evenhandedly enforced by the Boston and Brookline police.

■ The Attorney General's narrow interpretation of the employee and agent exemption appears to be a vigorous attempt to construe the Act in accordance with the Court of Appeals' opinion in *McGuire, et al.,* 260 F.3d 36, and to thereby provide a framework under which the exemption may be applied without violating the constitutional rights of the plaintiffs. This Court looks favorably upon the Attorney General's narrowing construction of the exemption, *see McGuire, et al.,* 230 F.Supp.2d at 193, and gives said construction great weight when considering the as-applied constitutionality of the Act. *See New England Regional Council of Carpenters v. Kinton,* 284 F.3d 9, 26 (1st Cir.2002) (in context of First Amendment challenge to leafleting restrictions, the court "[gave] weight to [state] agency's narrowing interpretation of its own regulations") (*citing City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 770 n. 11, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988))

(declaring it proper for courts to "presume any narrowing construction or practice to which [a state] law is 'fairly susceptible.' "). Such deference is especially appropriate in instances such as the case at hand, where the record lacks evidence that the state law has been administered in an unfair or discriminatory fashion. *See Kinton,* 284 F.3d at 26.

■ Having determined that the Attorney General's interpretation of the Act should be given weight, the Court can identify no basis in the plaintiffs' evidence to find that the Act, as construed by the Attorney General, is being applied unconstitutionally. It is not proper for the plaintiffs to seek relief at this time, based on the mere possibility that the Act will not be applied evenhandedly in the future. The appropriate time for this Court to deal with the alleged as-applied unconstitutionality of the Act's employee and agent exemption would be when a pattern of unlawful favoritism, abuse, or infelicitous application of the Attorney General's construction actually emerges. *See Id.* (*citing Chicago Park Dist.,* 534 U.S. at 325, 122 S.Ct. 775). Even after an extended discovery period, however, plaintiffs have failed to produce evidence of such a pattern.

■ Defendants argue that the clinic escorts' (who are *private parties*) alleged violations of the Act and other general interferences with the plaintiffs' rights, cannot be a proper basis for a declaration that *state officials* have violated the Constitution. Defendants correctly point out that "the 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450

(1976). In this case, no clinic escort is before the Court as a defendant. Any injury that results from the conduct of the escorts, then, may not properly be redressed by this Court. Furthermore, a violation of the Fourteenth Amendment may result only from *state* action. *See Brentwood Acad. v. Tennessee Secondary Sch. Athletic Assn.*, 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) ("Our cases try to plot a line between state action subject to Fourteenth Amendment scrutiny and private conduct (however exceptionable) that is not."). In order to properly ground their as-applied challenge in the actions of the clinic escorts, then, the plaintiffs must show how the actions of such private parties may be attributed to the *state*.

Only under certain circumstances may seemingly private behavior "be fairly treated as that of the State itself." *Id.* (*quoting Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)). According to First Circuit precedent, "[t]he essential state action inquiry is whether the government has been sufficiently involved in the challenged actions that it can be deemed responsible for the plaintiff's claimed injury." *Yeo v. Town of Lexington*, 131 F.3d 241, 248 (1st Cir. 1997). Although the state action inquiry is "necessarily fact bound," *id.* at 249, the Supreme Court has recognized a number of factors that can bear on the fairness of attributing seemingly private actions to the state. *See Brentwood Acad.*, 531 U.S. at 296, 121 S.Ct. 924 (stating that a challenged activity may be "state action" when: (1) it results from the State's exercise of coercive power; (2) the State either overt-

ly or covertly provides significant encouragement for said activity; or (3) a private actor operates as a willful participant in joint activity with the State or its agents) (quotations and citations omitted). Without any of these factors being present in this case the Court has no grounds upon which to attribute the actions of the private escorts to the State, and the plaintiffs' as-applied challenge to the constitutionality of the Act, therefore, may not be based upon these actions.

The Court rules that the Act is not unconstitutional as-applied to the circumstances in this case. The Attorney General has interpreted the Act's prohibition against oral protest, education, or counseling within the restricted areas to apply evenhandedly to both clinic employees and agents and to anti-abortion protesters, and there is no genuine issue of fact that the Attorney General's construction is not being applied by the law enforcement authorities in the jurisdictions where the plaintiffs engage in sidewalk counseling. Defendants' Renewed Motion for Summary Judgment is, therefore, granted.

The subject of abortion raises the most awesome and profound legal, moral and biological questions relating to the origin, nature and destiny of human life: such ultimate issues as to when does life begin and who has the authority to terminate it and under what conditions, and more specifically, what constitutes a human person and does the "unborn person" have "certain unalienable Rights," and if so, can such rights be limited. For this reason the abortion debate will continue to provoke the clash of robust public discourse in our time.[11] Pro-life advocates are morally

---

**11.** When issues are based on conscience and not on expediency, such as those involving life and death, war and peace, genocide, slavery or human rights, the clash of ideas never ceases to resound in the public square until a resolution is finally achieved. Such issues of conscience do not fade into silence over time

due to public disinterest or apathy. Henry David Thoreau in his "Civil Disobedience," the manual for groups, such as Martin Luther King's, who wish to awaken the conscience of the people, exhorted his fellow citizens to peacefully confront laws deemed to be moral-

convinced that an unborn child is a living human person whose right to life should be secured by the protections of the United States Constitution. Pro-choice advocates are as convinced that the unborn child is not a living human person and that the unborn child's mother has the choice to terminate the life of her unborn child, even, in some instances, of a child partially born. No statute, as applied, should deny either view, pro-abortion or anti-abortion, in this vigorously contested debate equal access to the public forum to exercise its freedom of expression.

Sound public policy depends on a fully informed citizenry in our representative form of government, and a fully informed citizenry is achieved by a free and equal expression of conflicting ideas. For although this case has been characterized by some as an "abortion" case, it is, in truth, a "free speech" case, and, it is the necessary condition of a healthy and vigorous body politic that there be a full and fair debate on all serious public issues, including the issue of abortion. The measure of the vitality of a democracy is the degree to which the government permits the voices of dissent to protest its laws and policies. Pro-life protesters who conscientiously believe that abortion remains a grave moral evil must be given as equal an opportunity as their pro-abortion opponents to express their sincere message of respect for the sanctity of innocent human life.[12]

For the reason that the abortion debate will continue to be vigorously waged, the granting of defendants' Motion for Summary Judgment does not foreclose the plaintiffs or other pro-life protesters from initiating a subsequent action against the defendants challenging the constitutionality of the Act, as applied, in a concrete factual setting should there be evidence that clinic employees and agents are in fact exercising their statutory right to protest, educate or counsel and that the Act's exemption for clinic employees and agents is not being enforced in accordance with the Attorney General's interpretation of the Act requiring evenhanded enforcement of its prohibitions against all sides of the abortion debate, including clinic employees and agents, within the restricted areas. A subsequent action may also be commenced by plaintiffs or other pro-life protesters if the Attorney General's interpretation of the Act is changed so as not to require evenhanded enforcement of its prohibitions against both pro-life protesters and clinic employees and agents within the restricted areas.

In brief, for the Act to remain invulnerable to an as-applied constitutional challenge, the Attorney General's interpretation must remain unchanged and the law enforcement authorities must vigorously enforce such interpretation.

---

ly evil and "not resign (their) conscience to the legislator." Since the opposing views on the abortion issue are both rooted in deeply held beliefs, the debate will long continue. Those who oppose abortion believe that no one has the right to terminate innocent human life; those who support abortion believe that a woman has the right to choose to destroy the fetus within her body.

12. The prohibition against the deliberate killing of innocent human life was a precept of universal moral law and is one of the biblical Ten Commandments of the Judeo–Christian religious tradition. In addition to the unborn child, others who have been accorded non-person status under the law were Blacks in the ante-bellum South suffering under the inhuman, but constitutional yoke of slavery and Jews in Hitler's Nazi Germany who were herded under deportation orders to the gassy fumes of the death camps. It is one of the glories of our nation's history that William Lloyd Garrison and the other Abolitionists were free to vigorously express their conviction that slavery was a grave moral wrong.

Defendants' Renewed Motion for Summary Judgment is granted.

SO ORDERED.