Mary Ann McGUIRE, Ruth Schiavone and Jean B. Zarella, Plaintiffs

v.

Thomas REILLY, et al., Defendants.

No. CIV.A.00–12279–EFH.

United States District Court, D. Massachusetts.

Sept. 29, 2003.

Thomas M. Harvey, Law Office of
Thomas M. Harvey, Boston, MA, for Plaintiffs.

Adam Simms, Attorney General's Office, Elizabeth K. Frumkin, Attorney General's Office, Patricia Correa, Attorney General's Office, William W. Porter, Attorney General's Office, Boston, MA, for Defendants.

### MEMORANDUM AND ORDER

HARRINGTON, Senior District Judge.

This case has involved a facial and an as applied constitutional challenge to Mass. Gen.L. ch. 266, § 120E½'s exemption for abortion clinic employees and agents.

The instant matter now pending before the Court is Plaintiffs' Motion to Alter or Amend Judgment Pursuant to Fed. R.Civ.P. 59(e) filed subsequent to the Court's granting of Defendants' Motion for Summary Judgment on plaintiffs' as applied challenge to Mass.Gen.L. ch. 266, Section 120E½. *McGuire, et al. v. Reilly, et al.*, 271 F.Supp.2d 335 (D.Mass.2003).

At issue is the constitutionality of the Massachusetts statute, Mass.Gen.L. ch. 266, Section 120E½, that regulates speech-related conduct within eighteen feet of reproductive health care facilities. The specific section of the statute that is challenged imposes both criminal and civil penalties on persons who knowingly approach another person, within six feet of such person, "for the purpose of passing a leaflet or handbill to, displaying a sign to,

or engaging in oral protest, education, or counseling," unless the targeted individual consents to such approach.[1] Exempted from the statute are "persons entering or leaving such facility" and "employees or agents of such facility acting within the scope of their employment."[2] The question is whether the First Amendment rights of the speaker are abridged by the protection the statute provides for the unwilling listener.

Plaintiffs Mary Anne McGuire, Ruth Schiavone and Jean B. Zarrella are three private citizens who regularly travel to the sidewalks and public ways in front of and near reproductive health care facilities, attempting to dissuade women from having abortions by engaging in counseling activities, including distributing leaflets and engaging in oral conversations. Plaintiffs allege that their fear of criminal prosecution caused them to be chilled in their exercise of fundamental constitutional rights.

The Court held the Act, Mass.Gen.L. ch. 266, Section 120E ½, facially unconstitutional because under the Act employees and agents of abortion clinics have the right to express their pro-abortion views within the restricted areas; whereas anti-abortion protestors are prohibited from expressing their anti-abortion views within the same areas. *McGuire, et al. v. Reilly, et al.*, 122 F.Supp.2d 97 (D.Mass.2000).

---

1. Mass.Gen.L. ch. 266, Section 120E½(b). The statute reads in relevant part: "No person shall knowingly approach another person or occupied motor vehicle within six feet of such person or vehicle, unless such other person or occupant of the vehicle consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education or counseling with such other person in the public way or sidewalk area within a radius of 18 feet from any entrance door or driveway to a reproductive health care facility or within the area within a rectangle not greater than six feet in width created by extending the outside boundaries of any entrance door or driveway to a reproductive

health care facility at a right angle and in straight lines to the point where such lines intersect the sideline of the street in front of such entrance door or driveway." *Id.*

This specific section of the statute is ruled severable from the complete statute itself.

2. *See* Section 120E½(b)(1–2). Also exempted are various law enforcement and emergency personnel, and persons using the public sidewalk or street right-of-way adjacent to such facility solely for the purpose of reaching a destination other than such facility. Section 120E½(b)(3–4).

The Court of Appeals for the First Circuit held the Act facially constitutional, although the Act accorded differential treatment to the statutory right to express two disparate views on the subject of abortion, on the ground that it promoted public safety, personal security, smooth traffic flow and effective medical services.

The Court of Appeals further ruled that there was no evidence that employees and agents had in fact utilized their statutory exemption as a means to protest, educate or counsel. *McGuire, et al. v. Reilly, et al.*, 260 F.3d 36 (1st Cir.2001). The Court of Appeals stated that if employees and agents do in fact utilize their statutory exemption to engage in preferential pro-abortion advocacy *"the plaintiffs remain free to challenge the act, as applied, in a concrete factual setting."*[3] *Id.* at 47. (Emphasis supplied)

Thereupon plaintiffs contended that the Act is unconstitutional, as applied, on the ground that employees and agents of the abortion clinics do in fact utilize their statutory exemption to engage in preferential pro-abortion advocacy within the restricted areas.

The issue raised was whether the defendants have applied the statutory clinic and agent exemption to permit the expression of a pro-abortion viewpoint by clinic employees and agents, while simultaneously prohibiting plaintiffs from articulating an opposing, anti-abortion message within the same restricted areas. After discovery was concluded, the Court granted Defendants' Motion for Summary Judgment on this issue. *McGuire, et al. v. Reilly, et al.*, 271 F.Supp.2d 335 (D.Mass.2003).

In their Motion for Summary Judgment as to the as applied challenge, defendants did not dispute the fact that abortion clinic employees and agents were utilizing their statutory exemption as a means to protest, educate or counsel.[4]

In view of this undisputed fact, the Court, in accordance with the Court of Appeals' directive, might have been required to rule that the Act was unconstitutional, as applied. However, there was a substantial change of circumstances since the Court of Appeals issued its decision: The Attorney General of Massachusetts has interpreted the Act's prohibitions against oral protest, education or counseling within the restricted areas to apply evenhandedly to both clinic employees and agents and to anti-abortion protesters, and such interpretation was adopted by the law enforcement authorities in those jurisdictions where the plaintiffs were expressing their pro-life message. The Court ruled that the plaintiffs had failed to present evidence that the law enforcement authori-

---

**3.** In an "as-applied" challenge, a plaintiff "contends that application of [a] statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional," *Ada v. Guam Soc'y of Obstetricians & Gynecologists*, 506 U.S. 1011, 1012, 113 S.Ct. 633, 121 L.Ed.2d 564 (1992) (Scalia, J., Rehnquist, C.J., and White, J., dissenting), *denying cert. to* 962 F.2d 1366 (9th Cir.1992), and asks only that the reviewing court declare the challenged statute unconstitutional on the facts of the particular case. *Sanjour v. Environmental Protection Agency*, 56 F.3d 85, 92 n. 10 (D.C.Cir.1995).

**4.** It was on the basis of the Act's exemption for clinic employees and agents that the Court held the Act to be *facially* unconstitutional. *McGuire, et al. v. Reilly, et al.*, 122 F.Supp.2d 97 (D.Mass.2000). The Court indicated that employees and agents had *exercised* their statutory right to protest, educate or counsel based on their financial and philosophical incentive to do so, their function as volunteer escorts "to help provide safe, unimpeded clinic access for women," and common experience which teaches that a statutory right is ultimately exercised. This finding has since been supported by evidence developed during discovery.

ties were not evenhandedly enforcing the Attorney General's interpretation of the Act's prohibitions against both pro-life protesters and pro-choice clinic employees and agents within the restricted areas and that no genuine issue of material fact had been raised.

The Court, in granting Defendants' Motion for Summary Judgment, stated that its decision did not foreclose the plaintiffs or other pro-life protesters from initiating a subsequent action against the defendants challenging the constitutionality of the Act, as applied, in a concrete factual setting should there be evidence that clinic employees and agents are in fact utilizing their statutory exemption as a means to protest, educate or counsel and that the Act's exemption for clinic employees and agents is not being enforced in accordance with the Attorney General's interpretation of the Act requiring evenhanded enforcement of its prohibitions against all sides of the abortion debate, including clinic employees and agents, within the restricted areas. The Court also stated that a subsequent action may also be commenced by plaintiffs or other pro-life protesters if the Attorney General's interpretation of the Act is changed so as not to require evenhanded enforcement of its prohibitions against both pro-life protesters and clinic employees and agents within the restricted areas.

The Court ruled, in brief, for the Act to remain invulnerable to an as-applied constitutional challenge, the Attorney General's interpretation must remain unchanged and the law enforcement authorities must vigorously enforce such interpretation.[5]

■ The plaintiffs raise only one issue[6] in their Motion to Alter or Amend Judgment which requires to be addressed by the Court, namely, whether there is a genuine issue of material fact foreclosing the granting of summary judgment, as plaintiffs claim that the Court allegedly overlooked four areas of evidence from which a reasonable factfinder could infer that the Act is not being evenhandedly enforced in accordance with the Attorney General's interpretation of the "employee and agent" exemption from the Act's prohibitions.

The plaintiffs presented evidence that (1) clinic employees and agents have engaged and continue to engage in "oral protest, education or counseling" within the restricted areas, yet the government has never made a single arrest, nor brought a single prosecution against any clinic employee or agent exempted under the express terms of the Act; that (2) no police officer has been stationed in a position to be able to listen to the speech of clinic employees and agents in order to ascertain whether they are engaged in speech activities prohibited by the Act; that (3) no police officer has ever issued a warning to a clinic employee or agent for speech activities prohibited by the Act, as the only warnings issued to clinic escorts have been for their physical aggressiveness; whereas plaintiffs and their fellow

---

**5.** The Legislature could amend the Act by redrafting the exemption for clinic employees and agents to expressly comport with the Attorney General's interpretation and, thus, cure any potential constitutional infirmity. For the Attorney General's interpretation has eliminated the potential constitutional defect for only so long as such interpretation is being enforced and such interpretation is continued in effect by the Massachusetts courts.

**6.** The Court does not address the other two issues raised by plaintiffs, namely, that the Court applied an unnecessarily narrow view of as applied constitutional challenges, and impermissibly allowed the government to obtain a judgment by voluntarily changing its conduct to undercut the basis for plaintiffs' challenge, resting on its legal reasoning in *McGuire, et al. v. Reilly, et al.,* 271 F.Supp.2d 335 (D.Mass.2003)

pro-life protesters have received repeated warnings and arrest threats from the police for their speech activities prohibited by the Act; and that (4) police officers have instructed clinic employees and agents to enter and exit the clinics so as to fall under the "enter and exit" exemption in the Act and thereby circumvent and render irrelevant the Attorney General's interpretation of the "employee and agent" exemption.

The defendants respond that the Court properly concluded that the plaintiffs failed to produce evidence that the "employee and agent" exemption is not being evenhandedly enforced by the law enforcement authorities in accordance with the Attorney General's interpretation.

█ Plaintiffs claim that the Act's prohibitions are not being evenhandedly enforced against both pro-life advocates and pro-abortion escorts can be inferred by the failure of law enforcement to arrest or prosecute any clinic employee or agent who has engaged and continues to engage in pro-abortion speech within the restricted areas under the express terms of the Act's exemption. However, such evidence does not show that the government has enforced the Act unequally. The Attorney General has interpreted [7] the Act to prohibit clinic employees and agents from expressing a pro-abortion viewpoint, or from attempting to counsel or educate patients, within the restricted areas. And law enforcement authorities have adopted the Attorney General's construction of the Act, thus rejecting the notion that the employee and agent exemption protects employees and agents who express their views on abortion to patients within the restricted areas. Although no employee or agent has been arrested or prosecuted, neither has

any plaintiff, and only one person (a pro-life protester) has been arrested for violation of the Act, but only after repeated warnings over a period of months. As fully discussed in *McGuire, et al. v. Reilly, et al.*, 271 F.Supp.2d 335 (D.Mass.2003), clinic escorts' (who are private parties) alleged violations of the Act cannot be a proper basis for a declaration that state officials have violated the Constitution. A violation of the Fourteenth Amendment may result only from state action and the Court has no grounds upon which to attribute the actions of private escorts to the State, and the plaintiffs' as applied challenge to the constitutionality of the Act, therefore, may not be based on these actions. *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295–96, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001).

As to plaintiffs' argument that police officers have failed to station themselves in a position to listen to what escorts say in order to determine whether the Act is being violated, police officers must be able to exercise reasonable judgment in deciding how best to observe activities at the clinics in order to maintain order there. It is to be noted that none of the plaintiffs has ever complained to the police stationed at the clinics about the conduct of the escorts at clinic entrances.

As to plaintiffs' argument that the only warnings given to clinic employees and agents by police officers were for "physical aggressiveness" and not for speech activities prohibited by the Act, an escort that is "overly aggressive" in assisting patients into the clinic might well be viewed by a police officer as exceeding the scope of the clinic employee and agent exemption which

---

7. The Attorney General has interpreted the Act to exempt clinic employees and agents from the Act's restrictions *only* when they assist patients to secure safe, unimpeded clinic access, but not if they protest, educate or counsel the patients.

was designed to protect only those "who work to secure peaceful access" to the clinics. *McGuire, et al. v. Reilly, et al.,* 260 F.3d at 47.[8] The police would advance the purposes of the Act by warning escorts against "putting their arms out [to] fend off people who walk up to them." Such action on the part of the police could make it less difficult for pro-life protesters to request consent from the escort's patient to approach and counsel her about alternatives to abortion. Both pro-life protesters and clinic escorts have received warnings by the police of potential violations of the Act and the police departments have made it their policy to arrest individuals only after issuing a warning to anyone engaging in particular conduct appearing to violate the Act.

As to plaintiffs' argument that police officers have instructed employees and agents to enter and exit the clinics so as to fall under the "enter and exit" exemption, clinic employees and agents do not fall within the Act's exception for "persons entering or leaving" a clinic merely by stepping in and out of the clinics. That exemption applies only to persons with legitimate business inside the clinic, such as patients and those accompanying them, and not to employees and agents who are covered by a separate and distinct exemption. Plaintiffs, moreover, produced no evidence as to the reasons why the police might have given such instructions to employees and agents and under what circumstances.

Plaintiffs must prove that the government does not enforce the Act evenhandedly according to the Attorney General's neutral interpretation. *See City Council of Los Angeles v. Taxpayers for Vincent,*

466 U.S. 789, 804, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) (Court found no viewpoint discrimination where the "text of the [challenged] ordinance is neutral ... and the District Court's findings indicate that it has been applied to appellees and others in an evenhanded manner.") Thus, with respect to their as applied claim, the plaintiffs are properly required to establish that a neutral provision "is not being evenhandedly enforced." *See Thomas v. Chicago Park Dist.,* 534 U.S. 316, 325, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002) (petitioners' First Amendment claim against neutral permit requirement for public rallies should be addressed only "if and when a pattern of unlawful favoritism appears" in the way City issues permits); *New England Council of Carpenters v. Kinton,* 284 F.3d 9, 26 (1st Cir.2002) (court should adjudicate alleged abuses of government discretion to apply leafletting restrictions only if and when the statute is unfairly enforced).

 The aforesaid evidentiary factors fail to raise a genuine issue of material fact that law enforcement officials were not evenhandedly enforcing the Attorney General's interpretation of the Act against both pro-life protesters and clinic employees and agents but rather were according "preferential" treatment to the "pro-choice" speech of clinic employees and agents. The Court denies Plaintiffs' Motion to Alter or Amend Judgment. Plaintiffs must submit specific evidence that they have been harmed by discriminatory enforcement of the Act. "[C]hallenging a rule 'as-applied' often requires more specific allegations of harm than are necessary to test facial validity." *Kines v. Day,* 754 F.2d 28, 30 (1st Cir.1985). "[O]nce [a] rule has been adjudged constitutional on

---

**8.** According to the Attorney General's interpretation, employees and agents are exempted from the Act's speech restrictions *only* as necessary to perform such duties within the scope of their employment, as helping patients gain safe access to a clinic, but not to use their status to engage in "protest, education or counseling."

its face there is no presumption of harm ... [and a] 'plaintiff ... must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.'" *Id.* at 31, quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979).

The Court acknowledges that the plaintiffs have raised a serious question on a matter of profound political, moral and legal significance.[9] For this reason the Court reiterates its advisory issued in *McGuire, et al. v. Reilly, et al.*, 271 F.Supp.2d 335 (D.Mass.2003), that plaintiffs should closely observe the conduct of law enforcement authorities and, if they develop sufficient evidence that such officials are failing to evenhandedly enforce the Attorney General's interpretation of the "employee and agent" exemption, then to initiate a new action challenging the as applied constitutionality of the Act. This course of action would constitute the most

prudent use of both legal and judicial resources.[10] Evenhanded enforcement of the Act would foster free speech in the public forum by securing equal access to the rostrum by advocates on all sides of the intense abortion debate. For a vigorous body politic is achieved only by the free and equal expression of conflicting ideas [11] on serious public issues. Thus, the enforcement of the Act must insure that the voices of those pleading to shield the gift of life must be protected to the same extent as their pro-choice adversaries so that both views have an equal opportunity to influence the formulation of public policy on an ultimate issue that will continue to provoke a vigorous clash of ideas.[12]

Plaintiffs' Motion to Alter or Amend Judgment is denied.

SO ORDERED.

9. That matter is the constitutional mandate of full and fair access to the public forum for free and open debate on such awesome questions as to when life begins and who has the authority to terminate innocent human life—to decide who is to live and who is to die, and under what conditions, and, more specifically, does the "unborn person" have "certain unalienable Rights," such as the right to life, and, if so, can such a right be abolished by an individual's private fiat.

10. If, after such observations, it is determined that law enforcement is evenhandedly enforcing the Attorney General's interpretation of the Act, the plaintiffs will have achieved fair and equal access to the public square to promulgate their pro-life message; if not, then they will have developed sufficient evidence to establish their case that defendants are silencing their pro-life speech, while protecting the voices of the pro-abortion clinic employees and agents within the restricted areas. Vigilant observance of police conduct should insure strict enforcement of the Attorney General's interpretation which has been adopted by their police departments.

11. The intense national debate on abortion is based on a profound and serious philosophical and biological dispute between so-called pro-life advocates who are morally convinced that an unborn child is a living human person whose right to life should be secured by the protections of the United States Constitution and so-called pro-choice advocates who are as convinced that the unborn child is not such a living human person and that the unborn child's mother has the choice to terminate the life of her unborn child, even, in some instances, of a child partially born.

12. Since the opposing views on the abortion issue are both rooted in deeply held beliefs on the elemental matter of life and death, the debate will long continue. Those who oppose abortion believe that no one has the right to terminate innocent human life; those who support abortion believe that a woman has the right to choose to destroy the fetus within her body. *See McGuire, et al. v. Reilly, et al.*, 271 F.Supp.2d 335, 344 n. 11 (D.Mass.2003).